In the Matter of SOCIETY OF THE NEW YORK HOSPITAL, Respondent-Appellant, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Appellants-Respondents.

SOCIETY OF THE NEW YORK HOSPITAL, Respondent-Appellant, v HOWARD VEIT, as Director of Office of Health Systems Management, et al., Appellants-Respondents.

In the Matter of NEW YORK EYE & EAR INFIRMARY, Respondent-Appellant, v DAVID AXELROD, as Commissioner of the New York State Department of Health, et al., Appellants-Respondents.

First Department, May 1, 1986

## APPEARANCES OF COUNSEL

*William C. Heck* of counsel *(Michael A. Butterworth* with him on the brief; *Kelley Drye & Warren,* attorneys), for Society of the New York Hospital, respondent-appellant.

*Norton L. Travis* of counsel *(Garfunkel, Wild & Travis, P. C.,* attorneys), for New York Eye & Ear Infirmary, respondent-appellant.

*Marion R. Buchbinder* of counsel *(Stanley A. Camhi* with her on the brief; *Robert Abrams, Attorney-General,* attorney), for appellants-respondents.

## OPINION OF THE COURT

KUPFERMAN, J. P.

Respondent-appellant-cross respondent Commissioner of Health of New York State, pursuant to Public Health Law § 2807 (3), establishes reimbursement rates for Medicaid, Blue

Cross, workers' compensation and no-fault insurance. The calculation of these rates is based on an analysis of actual costs during a given base year and projections of changes in those costs during a subsequent period. These projections are made based on trend factors which take into account, for example, operating costs and labor costs. In certifying the rate schedules, the Commissioner considers, for instance, differences between similar sized hospitals, hospitals in different geographic areas, and the economic factors affecting those hospitals. These rates must be certified by the Commissioner as being "reasonably related to the costs of efficient production" of the hospital services involved. (Public Health Law § 2807 [3].)*

In 1978, District 1199 of the Health and Hospital Workers Union (District 1199) struck a group of hospitals which were members of the League of Voluntary Hospitals (League). Although a settlement was eventually reached, the League sought an increase in its reimbursement rate to offset the increased costs resulting from the settlement.

In July 1978, New York State and the League entered into an agreement, whereby the State acknowledged the League's collective bargaining agreement and in exchange therefor, the League was entitled to an increase in reimbursement payments by virtue of the increased labor costs. In 1980, a similar agreement was made when the League renegotiated its contract with District 1199.

Accordingly, in July 1978, SHIF (Supplemental Hospital Index Factor) benefits were instituted. SHIF was a method by which the labor cost component of a hospital's trend factors could be obtained. A SHIF waiver was granted based on a hospital's actual projected increased labor costs resulting from the hospital's multiyear wage agreement. The purpose of the SHIF waiver was to provide relief to hospitals that, due to an inability to meet increased labor costs, would suffer economic hardship if their rates were calculated under the normal rate method. SHIF guaranteed to those hospitals deemed eligible for SHIF benefits that if their actual labor cost increases were higher than the ceiling on reimbursable labor cost increases established by a trend factor analysis (10 NYCRR 86-1.15), the

---

* Amended by Laws of 1982 (ch 536, § 3, eff Jan. 1, 1983) which requires the Commissioner to certify that the rates are "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities."

ceiling would be waived and reimbursement rates would be based on actual cost increases.

The State issued a Health Facilities Memorandum which set forth eligibility requirements for SHIF benefits: (a) "[a] depleting general fund balance available for operations as reported to the Office of Health Systems Management for the last two calendar years"; (b) "[a] significant difference over the past two years between payment rates paid by governmental agencies and their actual economic costs"; (c) "[a] record of significant community service" and (d) "[a] multi-year written collective bargaining agreement or a multi-year written commitment to increase compensation to employees which the Commissioner finds is reasonable."

The Commissioner accordingly implemented a so-called "affordability" factor analysis to determine eligibility. The memorandum stated that the petition for SHIF benefits should include "[a]n analysis of the facility's affordability as it relates to the increase in labor costs." The "affordability" factor was arrived at by utilizing a "current ratio" analysis which ascertained the ratio of the hospital's or group's current assets to current liabilities. If the liabilities exceeded the assets, the hospital or group was considered *unable* to "afford" the increase and thus was eligible for the SHIF waiver, provided other requirements as set forth in the memorandum were met. If, on the other hand, the assets exceeded the liabilities, the hospital or group was deemed *able* to "afford" the increased costs resulting from the labor settlement and therefore ineligible for the SHIF waiver increase.

The State found that the League hospital members as a group had a current asset-to-liability ratio of less than 1:1 and thus were entitled to SHIF benefits. The State also determined the Association of Private Hospitals (APH), as a group of hospitals, to be eligible for the SHIF waiver. Both the Society of The New York Hospital (Hospital) and The New York Eye & Ear Infirmary (Infirmary) were denied reimbursement based on the Commissioner's affordability factor analysis which found them *able* to afford the increased labor costs.

*Axelrod I* is a CPLR article 78 proceeding brought by Hospital, an independent hospital, to challenge the reimbursement plan for 1978-1980; *Veit* is a declaratory judgment action brought by Hospital relating to 1980-1982; and *Axelrod II* is an article 78 proceeding brought by Infirmary, a voluntary, not-for-profit hospital, to challenge the denial of its reimbursement rates for 1978-1980.

Both Hospital and Infirmary claim that the affordability test was discriminatory because although some League hospitals had current ratios greater than 1:1 making them ineligible, all League and APH hospitals received SHIF benefits. Although Hospital did not satisfy the test, it contends that the denial of benefits was arbitrary and capricious. It further contends that even if the regulations are valid, they were arbitrarily and capriciously applied and that such application violated the equal protection clauses of the State and Federal Constitutions. The State, nonetheless, contends that application of the current ratio test was within the statutory authority of the agency. It argues that the grouping of League and APH hospitals had a rational basis, and that Hospital and Infirmary lacked standing to challenge the granting of SHIF benefits since they were found to be ineligible for them.

Special Term found that Hospital and Infirmary had standing to challenge the denial of benefits inasmuch as they were aggrieved by that denial. The court also found that the reimbursement rate structure had a rational basis and that as long as the test was applied uniformly, the Commissioner did not exceed the scope of his statutory or constitutional authority. Special Term determined that an open question existed as to whether the Commissioner acted arbitrarily and capriciously in denying SHIF benefits to Hospital and Infirmary while granting them to League and APH hospitals. We modify and find the application of the eligibility tests to be arbitrary and capricious and grant the cross motions for summary judgment to Infirmary and Hospital. Both respondents-cross appellants are entitled to waiver benefits under the SHIF reimbursement program.

As Special Term noted, a regulatory agency may not devise standards or regulations in an arbitrary or capricious manner so as to discriminate against a particular applicant. *(See, Freidus v Guggenheimer,* 57 AD2d 760.) Where a hospital's individual reimbursement rate is challenged, not only is it evaluated as to whether the rate was calculated in an arbitrary and capricious manner but there must exist "a reasonable basis in law or in fact to support the rate determination". *(Matter of Samaritan Hosp. v Axelrod,* 107 AD2d 911, 914, *appeal dismissed* 65 NY2d 636.) A challenge to the rate determination methodologies must "make a compelling showing of unreasonableness" *(supra,* at p 914). Both Hospital and League have met that requirement. It is unreasonable for the Commissioner to have denied SHIF benefits to Hospital and

Infirmary when they satisfied the criteria set forth in the Health Facilities memorandum, and had current ratios similar to the League and APH hospitals, which were granted SHIF benefits.

There is no specific authorization for the "affordability" test in either the statute or the regulations. In fact, the State concedes that the granting of SHIF benefits is antithetical to the policy underlying the regulations. Additionally, the affordability analysis was achieved by use of a "current-ratio" test, which is not only absent from the statute and regulations but is not even mentioned in the Health Facilities memorandum. It is dubious as to how an unpublished test that in the first instance is not authorized by statute or regulation and, as such, "gives the regulated entity no notice that the regulation may apply" *(Matter of Broadacres Skilled Nursing Facility v Ingraham,* 51 AD2d 243, 246), can be grounds for a denial.

Nonetheless, even if, as Special Term held, the affordability and current-ratio tests are rational and reasonable, it is apparent that the application of these eligibility requirement tests was different regarding Hospital and Infirmary as opposed to the APH and League hospitals. The results of the disparate application of these tests suggests that they were applied to Hospital and Infirmary in order to exclude them from the SHIF benefits, which were implemented to avert another strike by District 1199 against League hospitals. We find this disparate treatment to have been discriminatory. It was not applied, as Special Term noted it should have been, on a "uniform objective basis." Such a denial of SHIF benefits to Hospital and Infirmary was a deprivation of constitutional equal protection. *(See, e.g., McMinn v Town of Oyster Bay,* 66 NY2d 544.)

Accordingly, the order of the Supreme Court, New York County (Michael J. Dontzin, J.), entered February 19, 1985, which consolidated three cases, to wit, *Society of the N. Y. Hosp. v Axelrod, (Axelrod I),* an article 78 proceeding, *New York Eye & Ear Infirmary v Axelrod (Axelrod II),* an article 78 proceeding, and *Society of the N. Y. Hosp. v Veit (Veit),* a declaratory judgment action, and, *inter alia,* denied petitioner-plaintiff-cross appellant The Society of The New York Hospital's cross motion for summary judgment and denied petitioner-respondent-cross appellant The New York Eye & Ear Infirmary's cross motion for summary judgment, should be modified, on the law, to the extent of granting both Hospital's and Infirmary's cross motions for summary judgment, declar-

ing the denial of SHIF waiver benefits to Hospital to be arbitrary and capricious, and remanding for an assessment of benefits due and owing Hospital and Infirmary, and otherwise affirmed, without costs.

SULLIVAN, ROSS, CARRO and KASSAL, JJ., concur.

Order, Supreme Court, New York County, entered on February 19, 1985, unanimously modified, on the law, to the extent of granting both Hospital's and Infirmary's cross motions for summary judgment, declaring the denial of SHIF waiver benefits to Hospital to be arbitrary and capricious, and remanding for an assessment of benefits due and owing Hospital and Infirmary, and otherwise affirmed, without costs and without disbursements.