In the Matter of Exxon Corporation, Respondent, v Board
of Standards and Appeals of the City of New York et
al., Appellants.

First Department, May 28, 1987

### APPEARANCES OF COUNSEL

*Margaret G. King* of counsel *(June A. Witterschein* with her on the brief; *Peter L. Zimroth,* attorney), for appellants.

*George A. Burrell* of counsel *(Robert L. Haig* and *Scott I. Batterman* with him on the brief; *Kelley Drye & Warren,* attorneys), for respondent.

### OPINION OF THE COURT

SULLIVAN, J. P.

■ This appeal presents the issue of whether the New York City Zoning Resolution prohibits the operation of a combination convenience store/gasoline station. We are persuaded that it does not, and affirm the remand of the matter to the Board of Standards and Appeals for a consideration of the relevant factors in determining whether the proposed convenience store satisfies the Zoning Resolution definition of an accessory use.

Exxon is the lessee under a long-term lease of premises located on Bell Boulevard in Queens. The property, a corner lot, is currently utilized, pursuant to a "variation" granted by the Board of Standards and Appeals on April 3, 1956, as a gasoline service station, with a lubritorium, an auto repair facility, as well as facilities for auto washing, an office, and the sale and storage of auto accessories. All four corners of the intersection are zoned C2-2, which allows commercial use by

service establishments.[1] The surrounding area is residentially zoned.

In 1985, the owner of the property submitted an application to the Department of Buildings to construct a new building in order to convert the use of the premises to a 24-hour self-service gasoline station, without repair facilities and with a small retail, or convenience store. A retail store falls within a Use Group 6 under the New York City Zoning Resolution and, generally speaking, is permitted as of right, i.e., without need for prior approval, in a C2 area. The Department of Buildings disapproved the application on August 16, 1985, noting, *inter alia,* the following objection: "Proposed retail store on same zoning lot with 'automotive service station' not permitted and contrary to Sec. 12-10 [Zoning Resolution]."[2]

Section 12-10 of the New York City Zoning Resolution defines "automotive service station" as:

"[A] *building or other structure* or a tract of land used exclusively for the storage and sale of gasoline or other motor fuels and for any *uses accessory* thereto.

"The sale of lubricants, accessories, or supplies, the lubrication of motor vehicles, the minor adjustment or repair of motor vehicles with hand tools only, or the occasional washing of motor vehicles are permitted *accessory uses.*

"A *public parking lot* or *public parking garage* is not a permitted *accessory use."* (Italics as in original.)

Section 12-10 also defines "accessory use":

"An 'accessory use':

"(a) Is a *use* conducted on the same *zoning lot* as the principal *use* to which it is related (whether located within the same or an *accessory building or other structure,* or as an

---

1. Since the subject premises is presently in a C2 zoning district, a variance is no longer necessary for the operation of a gasoline station. A special use permit is all that is required.

2. Only the objection based upon the addition of a convenience store is at issue on this appeal. The Department has also objected to the proposed reconstruction on two other grounds: the need for assurance that fire safety requirements have been considered and the fact that, in completely demolishing the existing gas station, which was constructed prior to the 1961 enactment of the Zoning Resolution, the owner would lose all right to operate such a facility (a nonconforming Group 16 Use) in a C2 area and would have to seek a special use permit or a variance in order to reconstruct any facility selling gasoline at the subject site. The proceeding relating to the appeal from the latter objection was adjourned *sine die* pending final determination of the instant matter. ■

*accessory use* of land), except that, where specifically provided in the applicable district regulations, *accessory* off-street parking or loading need not be located on the same *zoning lot;* and

"(b) Is a *use* which is clearly incidental to, and customarily found in connection with, such principal *use;* and

"(c) Is either in the same ownership as such principal *use,* or is operated and maintained on the same *zoning lot* substantially for the benefit or convenience of the owners, occupants, employees, customers, or visitors of the principal *use.*

"When 'accessory' is used in the text, it shall have the same meaning as *accessory use.* " (Italics as in original.)

Through their architect, Exxon and the owner appealed to the Board of Standards and Appeals from the Department of Buildings determination, and requested the Board to issue an interpretation of the two subsections of section 12-10 of the Zoning Resolution which define "automotive service station" and "accessory use," respectively, so as to permit the operation of a convenience store at the subject property in conjunction with a self-service gas station. The architect argued that since the Zoning Resolution does not specifically prohibit such combined use, the Board should recognize a retail store as an accessory use to a gas station in a zone where retail stores are permitted. In partial support of his position, the architect relied upon a 1967 Department of Buildings directive stating, in regard to gas stations, that "additional uses are permitted."

The architect also submitted written materials showing that the operation of a small convenience store in combination with the self-service sale of gasoline had become commonplace throughout the country over the last few years. At present, for instance, in excess of 70% of all sales of gasoline are conducted from self-service pumps, and some 55,000 gasoline stations, a number of which are located in the City of New York, are being operated in conjunction with a convenience store. The architect placed before the Board examples of some of the many instances in which it had expressly sanctioned such combined use for others, including Exxon's direct competitors.

■ By unanimous vote and without making any factual findings, the Board upheld the Department of Buildings objection. In so doing, it adopted an interpretation of section 12-10 of the Zoning Resolution which limited permitted "accessory uses" to those contained in that section's definition of "automotive service station." Exxon then commenced this CPLR

article 78 proceeding. The court which heard the petition held, *inter alia,* that the Board had interpreted the Zoning Resolution too restrictively and arbitrarily, vacated its resolution and remanded the matter to the Board.[3] This appeal followed.

Zoning ordinances, which are in derogation of common law, must be strictly construed against the zoning authority. *(Thomson Indus. v Incorporated Vil. of Port Wash. N.,* 27 NY2d 537, 539; *Matter of 440 E. 102nd St. Corp. v Murdock,* 285 NY 298, 304.) In construing a zoning regulation, "the issue is not whether the use is permissible, but, rather, whether it is prohibited." *(Matter of De Masco Scrap Iron & Metal Corp. v Zirk,* 62 AD2d 92, 98, *affd* 46 NY2d 864.)

In its resolution denying Exxon's appeal, the Board declared that the definition of "automotive service station" contained in section 12-10 "sets forth a clear list"—in effect, an exclusive list—"of the uses permitted as accessory."[4] But the definition of an automotive service station as a building or tract of land used exclusively for the storage and sale of gasoline or other motor fuels "and for any *uses accessory* thereto" speaks, insofar as the expression "accessory uses" is concerned, not in terms of exclusion or limitation, but, rather, inclusion. The statute expressly permits "any" accessory uses. While section 12-10 enumerates certain permitted accessory uses, it does not, even implicitly, hold the specified uses out as exclusive. Nor does it indicate that these uses are necessarily characteristic of the only permitted types of use. Significantly, nowhere does it say that "accessory uses", in the context of an automotive service station, must relate directly to the care and maintenance of automobiles. "Had the [city] intended to impose such a condition * * * it could easily have done so." *(Matter of Allen v Adami,* 39 NY2d 275, 277.) Zoning regula-

3. The Board argues that a remand was unnecessary since, in accordance with the court's decision, a convenience store is an accessory use to a gasoline station as a matter of law and, on remand, it would not have any latitude for the exercise of discretion. We do not read the court's decision so expansively. In our view, it merely held that the Zoning Resolution did not prohibit a convenience store as an accessory use as a matter of law, and remanded the matter for further consideration not inconsistent with that determination. Thus, the order is not a final determination and is not appealable as of right. (CPLR 5701 [b] [1].) Since the issue presented is an important one, leave to appeal is granted, *sua sponte.* (CPLR 5701 [c].)

4. The Board also relied, in part, upon its reading of Department of Buildings Directive 7-1967, dated March 23, 1967, as limiting the accessory uses of an automotive service station to "uses [which] are all auto related uses."

tions may not be extended by implication. *(Matter of Monument Garage Corp. v Levy,* 266 NY 339.)

That the Zoning Resolution provides for the inclusion of "any" use accessory to the main use of selling gasoline is made clear in other ways. At the very beginning of section 12-10, the definitional portion of the Zoning Resolution, the following caveat appears: "Words in the text or tables of this resolution which are *italicized* shall be interpreted in accordance with the provisions set forth in this Section." (Emphasis in the original.) As is set forth in section 12-01 (c), "[t]he word 'shall' is always mandatory and not discretionary." Accordingly, whenever an italicized word appears in any part of the Zoning Resolution, that word must be interpreted in accordance with the definition thereof provided in section 12-10. The Zoning Resolution definition of an "automotive service station", as italicized, provides, in pertinent part: "used exclusively for the storage and sale of gasoline or other motor fuels and for any *uses accessory* thereto." Thus, the Zoning Resolution requires that "uses accessory," as set forth in the definition of an automotive service station, be, without exception, "interpreted in accordance with" the definition of accessory uses set forth in section 12-10.

In determining what are the "uses accessory" to an automotive service station, the Board was therefore required to refer to the definition of an accessory use. It refused to do so, however, insisting that it is "unnecessary to even address the issue of whether a retail store would fit within the general definition of 'accessory use' ", since it considers the list of permissible uses set forth in the definition of automotive service station to be exhaustive. If this were so, however, the words "uses accessory" in that definition would not have been italicized, thereby invoking the Zoning Resolution's definition of "accessory uses". Thus, the Board's interpretation is in direct contradiction to the unambiguous language of the Resolution.

Moreover, the same definition of "automotive service station" includes not only the list of accessory uses which the Board claims is exhaustive and all-inclusive, but also contains two uses—parking lots and parking garages—which are prohibited. The Board never suggested that these were the only *uses* prohibited. Yet, if one list were an all-inclusive enumeration of permitted accessory uses, as the Board contends, there would be no reason at all to have the second list of excluded uses. The existence of such a list, of necessity, militates

against the argument that the first list contains the only permitted uses.

The Zoning Resolution's enumeration of two proscribed uses was apparently intended to prevent undue disturbance to surrounding areas. For instance, the Resolution permits "the minor adjustment or repair of motor vehicles with hand tools only", and "the occasional washing of motor vehicles", thus interdicting such activities as major overhauls and a commercial car wash. Obviously, the replacement of even these permitted activities with a small retail store would not undermine the intent of the Zoning Resolution.

Thus, the Board's interpretation of section 12-10 effectively struck the words "and for any *uses accessory* thereto" from the last part of the first paragraph. Likewise, it also deleted the last paragraph of the definition with the two prohibited uses, since, according to the Board's reasoning, anything not explicitly mentioned in the second paragraph would be automatically prohibited anyway. In so doing, the Board violated the well-established principle of statutory construction that a statute must be viewed as a whole, and, to that end, all of its parts, should, if possible, be harmonized to achieve the legislative purpose. *(See, Sanders v Winship,* 57 NY2d 391, 395-396; *People v Mobil Oil Corp.,* 48 NY2d 192, 199; McKinney's Cons Laws of NY, Book 1, Statutes §§ 97, 98, 130.) It is also a rule of statutory construction that "effect and meaning must, if possible, be given to the entire statute and every part and word thereof." (McKinney's Cons Laws of NY, *op. cit.,* § 98; *accord, Pearson v Pearson,* 81 AD2d 291, 293; *Grich v Wood & Hyde Leather Co.,* 74 AD2d 183, 184.)

Absent an explanation for the use of the word "any" in the definition, or for the list of prohibitions in the third paragraph, the obvious intent of the Resolution is that any use which would fit the general definition of an accessory use, unless prohibited, is permissible. This would include all uses which are customarily found in connection with the operation of an automotive service station, irrespective of whether they are specifically mentioned in the second paragraph of the definition, or are expressly "auto related".

Citing, *inter alia, Matter of Lezette v Board of Educ.* (35 NY2d 272, 281), the Board argues that the court is bound to uphold an administrative interpretation, even when doubt or ambiguity exists with respect to the proper construction of a statute. Yet, as already noted, zoning ordinances are in dero-

gation of common-law rights and, accordingly, must be strictly construed so as not to place any greater inference upon the free use of land than is absolutely required. *(See, Matter of 440 E. 102nd St. Corp. v Murdock, supra,* 285 NY, at 304.) "Any ambiguity in the language used in such regulations must be resolved in favor of the property owner." *(Matter of Allen v Adami, supra,* 39 NY2d, at 277; *see also, FGL&L Prop. Corp. v City of Rye,* 66 NY2d 111, 115; *Town of Huntington v Barracuda Transp. Co.,* 80 AD2d 555.)

Moreover, the Board's interpretation of what constitutes an accessory use is not entitled to unquestioning judicial deference, since the ultimate responsibility of interpreting the law is with the court. While courts should give due consideration to an agency's practical construction of a statute over a period of time *(see, e.g., Town of Amherst v County of Erie,* 260 NY 361, 369-370), the Board admits that its determination in the instant matter was not part of any long-standing practical construction of the statute. Indeed, it has characterized the issue as "one of first impression". In fact, however, as Exxon demonstrates, the Board's long-standing practice has been to permit a retail store to be operated in combination with a gasoline service station. Indeed, the Board recognized as much when its chairperson stated, "The fact that it's become popular and many New York City service stations are equipped with Use Group 6 retail occupancies and that such cases have not had objections issued to them, it seems to the Board, is obvious but not controlling in this case."

While an administrative agency is accorded broad regulatory authority, "[d]iscretionary power is not absolute; it is subject to the limitation that it cannot be exercised arbitrarily". *(Matter of Freidus v Guggenheimer,* 57 AD2d 760, 761.) Thus, an administrative agency may not rule or act in such a way as to result in inconsistent treatment of similarly situated parties. *(See, Matter of Society of N. Y. Hosp. v Axelrod,* 116 AD2d 426; *Matter of Freidus v Guggenheimer, supra; see also, R-C Motor Lines v United States,* 350 F Supp 1169, 1172, *affd* 411 US 941 ["Although the doctrine of *stare decisis* does not apply to decisions of administrative bodies, consistency of administrative rulings is essential, for to adopt different standards for similar situations is to act arbitrarily."].)

The record indicates that the Board, in a significant number of cases, granted specific permission to others, including Exxon's direct competitors, to operate a gasoline station in combination with a retail store, among other uses. For example,

under Calendar No. 914-83-A, the Board issued a resolution which states that the application sought permission, *inter alia,* "to erect a new * * * brick building to contain the attendant's booth and a retail store (Use Group 6)." In response to that application, the Board specifically amended a prior resolution, and approved the erection of the said "brick building to contain attendant's booth and other conforming uses." As demonstrated by photographs in the record, that "conforming use" is a gasoline station/convenience store combination.

Under Calendar No. 959-83-BZ, the Board again specifically permitted the combination of a gasoline station and a convenience store. The Board suggests, however, that, in that instance, it was only considering whether to allow "larger than permitted business signs," and that it did not focus on the fact that the site included a convenience store. This claim is belied by the language of the resolution, which clearly states:

"WHEREAS, the proposed retail convenience store is a permitted use in the district; and

"WHEREAS, the applicant has declared, in response to the community's request, that no beer or liquor will be sold in the retail convenience store * * *

"Resolved, that the Board of Standards and Appeals does hereby make the required findings and grants a Special Permit * * * to permit * * * the reconstruction of an automotive service station * * * into an automobile gas and oil selling station and the addition of a retail convenience store on condition * * *

"THAT the store shall not sell beer or liquor * * *

"THAT there shall be separate employees for the self-service gasoline station and for the retail convenience store at all times."

Similarly, the Board asserts that Calendar No. 654-77-A merely involved an application "to install two new gasoline pump islands and to erect a new steel building." But, as the Resolution clearly states, the petitioner sought permission "to erect a new steel building * * * for use as an attendant's booth and retail store (Use Group 6)." Under Calendar No. 573-55BZ, the Resolution's description of the "subject" made it clear that the purpose of the application was "to change the use of the accessory building of a gasoline service station (Use Group 16) to a food retail store (Use Group 6)". Photographs of

the site clearly show the operation of a gasoline station and a retail store in the "accessory" building.

Clearly, despite the Board's denial of relevancy, these and other applications have placed the propriety of the operation of a retail store as an accessory use to a gasoline station squarely in issue. Whatever the paramount consideration in each of these applications, if the operation of the combination gas station/retail store were illegal, the Board would not even have had to consider any other issue. The Board has not offered any explanation as to why Exxon's application alone has been denied; nor why it faced a more restrictive definition of what is permissible as an accessory use than any other applicant. Clearly, absent a reasonable explanation, not demonstrated in this record, such discriminatory treatment is arbitrary, and was properly vacated by the motion court.

Although we do not read section 12-10 of the Zoning Resolution as expressly permitting the construction of a convenience store as an accessory use to an "automotive service station," as Exxon would have us do, there is ample evidence, on the basis of the record before us, that a convenience store may well fall within the Zoning Resolution's general definition of an "accessory use", Exxon's proposal obviously satisfies the first and last parts of the definition, as the facility would be on the same lot and would operate for the benefit and convenience of its customers. Only the requirement that the proposed use be one customarily found in connection with, and incidental to, the sale of gasoline poses a factual issue for Board resolution.

With respect to that issue, as already noted, evidence was offered that in 1985 over 55,000 stations in this country combined the sale of gasoline with a convenience store. The sale of convenience store products could be found in close to one third of all stations selling gasoline, with the trend clearly toward an increase in the number of such combinations. (Daniels, *Big Shift in Gasoline Retailing Is Changing Buying Patterns,* New York Times, May 28, 1985, at A1, col 1.) As the record reflects, these facts are repeated in numerous other articles highlighting what is, in fact, generally known—that the sale of some products at gasoline stations, or the sale of gasoline in connection with convenience store operations, is becoming commonplace in this country.

Nor does there appear to be any immediate danger that the incidental use will dominate the principal use. Consumer

research offered by Exxon reveals that the majority of patrons at Exxon Shops and Exxon's self-service gas stations purchase gasoline alone, while 26% purchase gasoline in combination with the purchase of another product. Only 22% limit their purchase to a convenience product solely. Facilities similar to the one proposed here generate, on average, a sales ratio of approximately 4:1 of motor fuel dollars to convenience item dollars.

In any event, since we find that a convenience store is not prohibited as an accessory use by the Zoning Resolution, although it is not expressly authorized, we remand the matter to the Board for specific findings of fact as to whether Exxon's proposed use qualifies as an accessory use within the section 12-10 general definition of that term.

Accordingly, the order of the Supreme Court, New York County (Louis Grossman, J.), entered July 21, 1986, which, *inter alia,* vacated the resolution of the Board of Standards and Appeals sustaining a Department of Buildings objection to petitioner's building application should be affirmed, without costs or disbursements.

ASCH, MILONAS, KASSAL and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on July 21, 1986, unanimously affirmed, without costs and without disbursements.