OPINION OF THE COURT
David B. Saxe, J.
In this CPLR article 78 proceeding, petitioner Toys "R” Us asks this court to reinstate a permit issued by the Department of Buildings of the City of New York (DOB), which authorized Toys "R” Us to construct and operate a three-story, 38,000-square-foot retail toy store at Third Avenue and 80th Street in Manhattan. If this relief is granted, this court would be required to set aside the determination of the Board of Standards and Appeals of the City of New York (BSA), which revoked the permit issued by the DOB.
I. OVERVIEW AND CHRONOLOGY
The premises are located at 1411-19 Third Avenue, at the northeast corner of Third Avenue and East 80th Street, and consist of the basement and first and second floors of a 16-story building, with loading docks fronting along East 80th Street.
From the time the building was built in 1926, it served as a storage and warehouse facility, in accordance with a 1926 certificate of occupancy, and in accordance with the zoning regulation applicable to that area at that time. When Morgan Manhattan Storage and Warehouse Company (Morgan Manhattan) purchased the premises in 1956, the building had been exclusively used and occupied as a warehouse, and it is uncontested that Morgan Manhattan continued to actively use and occupy the premises as a warehouse until August 1989.
It is similarly undisputed that, in reliance upon a contract of sale for the premises, Morgan Manhattan ceased warehouse operations, and emptied the warehouse, for the period of August 1989 to April 1991. It is even agreed that when it was apparent that the sale had fallen through, Morgan Manhattan attempted to reinstate sufficient use of the premises as a warehouse, so as to avoid losing treatment of the premises as a nonconforming use. This reinstatement of the nonconforming use was necessary in view of the 1961 Zoning Resolution which had rezoned the neighborhood in which the building is located, from a retail zoning district to a residential and commercial *899 district. While the commercially zoned portion, fronting on Third Avenue, does not present a problem for the petitioner, the portion of the building fronting on 80th Street (including the warehouse’s loading docks), which is now in a residential zone, may only continue to be operated as a nonconforming use (warehouse or retail store) if the nonconforming use was not abandoned.
Since Morgan Manhattan still intended to sell the property, in "reinstating” the warehouse use it did not recommence full operations of the warehouse business, nor did it invite back former customers. Instead, a limited quantity of goods then being stored in other Morgan Manhattan warehouses were transferred to the 80th Street facility, so as to reinstate use of the warehouse for storage.
The single disputed point is whether the actions taken and the use made of the warehouse, as recommenced in April of 1991, sufficed to protect its character as a nonconforming use.
If it failed to retain that character, the toy store may only be constructed in that portion of the premises fronting on Third Avenue, which is commercially zoned; but the portion along 80th Street, where the loading docks are located, will only be permitted to be used for residential premises.
In June of 1992, Chase Manhattan Bank (Chase) acquired the premises from Morgan Manhattan by way of a deed in lieu of foreclosure.
In February 1993, counsel for Chase Manhattan Bank sent the DOB a letter requesting "informal advice” as to whether the nonconforming use of the subject premises could be continued by Chase Manhattan Bank or any successor owner. In response to this request, the DOB issued an informal opinion that the nonconforming use at the premises had been reestablished in April 1991 and could thus be lawfully continued.
In March of 1994, Toys "R” Us purchased a commercial condominium unit of the premises, consisting of the basement, and first and second floors, from a subsidiary of Chase.
In June of 1994, the petitioner filed with the DOB an application and plans to convert the basement, first and second floors of the premises to a retail toy store. The petitioner conceded that Morgan Manhattan discontinued the operation of the warehouse in August 1989, but asserted that Morgan Manhattan reestablished the nonconforming warehouse use in April 1991.
In August 1994, the DOB approved petitioner’s application and plans for the proposed development and, in September *900 1994, issued a building permit, authorizing the conversion of the basement, first and second floors of the premises to a retail toy store.
On October 5, 1994, the DOB issued a letter officially denying a request for revocation of the building permit it had issued to Toys "R” Us.
In October of 1994, a coalition of neighborhood and block associations called "Neighbors-R-Us” challenged the grant of the building permit by way of an administrative appeal to the BSA.
On February 7, 1995, a public hearing was begun, and was continued on numerous occasions until July 18, 1995. The position of the neighborhood alliance was vigorously supported by a number of elected officials, whose statements were read into the record before the BSA. The BSA also reviewed hundreds of pages of submitted documents and heard testimony from all sides.
The BSA issued its decision on the appeal by a resolution dated July 18, 1995 in which it accepted the contention of the neighborhood alliance that warehouse use had been discontinued for a full two-year period, and therefore the right to continue the nonconforming use had been abandoned. The BSA overturned the DOB’s ruling on the permit.
[Sections II-IV deleted for publication.]
V. ISSUE AND ANALYSIS
The question for this court to decide is whether, upon the entire record, the BSA’s finding that there was a substantial discontinuance of the nonconforming use of the premises for a continuous two-year period was arbitrary, capricious, or unreasonable.
The Regulation
Zoning Regulation § 52-61 specifically provides that, "If for a continuous period of two years either the non-conforming use of land with minor improvements is discontinued, or the active operation of substantially all the non-conforming uses in any building or other structure is discontinued, such land or building or other structure shall thereafter be used only for a conforming use. Intent to resume active operation shall not affect the foregoing” (emphasis added).
In other words, in a residential district such as the 80th Street portion of the premises in question, an existing *901 nonconforming warehouse use may be continued (or may be changed to a nonconforming retail store use), so long as the active operation of substantially all of the nonconforming warehouse use has not been discontinued for any continuous two-year period. If, however, the active operation of substantially all of the nonconforming warehouse use has been discontinued for a continuous period of two years, the premises may be used thereafter only for a conforming use.
It bears emphasis that a single word distinguishes this situation from those treated in this State’s controlling case law: the word "substantially”.
In the leading case of Matter of Marzella v Munroe (69 NY2d 967 [1987]), the regulation under consideration (Village of Dobbs Ferry Code § 300-81B) stated that "an abandoned nonconforming use cannot be resumed”, containing no further standard for guidance. The landowner’s application for a permit to renovate was denied by the village building inspector, which decision was affirmed by the Zoning Board of Appeals, with the holding that the nonconforming use of the property had been abandoned and that under the Dobbs Ferry Code, an abandoned nonconforming use cannot be resumed. However, the Court annulled that determination, holding that "abandonment does not occur unless there has been a complete cessation of the nonconforming use” (Matter of Marzella v Munroe, 69 NY2d, supra, at 968 [emphasis added]). Therefore, any minimal nonconforming use is enough to protect the nonconforming use status.
Similarly, in Town of Islip v P.B.S. Marina (133 AD2d 81 [2d Dept 1987], lv denied 70 NY2d 611 [1987]), the zoning ordinance at issue reads, "discontinuance of any non-conforming use for a period of one year or more terminates such non-conforming use” (Town of Islip v P.B.S. Marina, supra, at 81-82, citing Town of Islip Code § 68-15[B]). Therefore, where one mooring of á marina was leased, and was used at least twice each year, the Court held that the nonconforming use was not terminated (133 AD2d, at 82, supra; see also, Baml Realty v State of New York, 35 AD2d 857 [3d Dept 1970]; Daggett v Putnam, 40 AD2d 576 [4th Dept 1972]).
The "complete cessation” standard which is applied in all of the above-mentioned cases is not entirely applicable here. In each case cited, the respective town’s zoning ordinance only speaks of a discontinuance without any further qualification; none use the word "substantial” or "substantially”, as does the regulation in question.
*902 Nevertheless, while the "complete cessation” standard cannot be directly applied, the policy underlying that standard must be applied here. As a rule, any community would prefer to extinguish any nonconforming uses. Nevertheless, zoning ordinances must be strictly construed against the zoning authority, since they are in derogation of the common law, and interfere with the free use of land by the property owner (Thomson Indus. v Incorporated Vil. of Port Washington N., 27 NY2d 537, 539).
Importantly, Zoning Resolution § 52-61 uses the word "all”, albeit with the modifier "substantially”. If the law had instead provided for loss of nonconforming use status merely upon discontinuance of a substantial amount of the nonconforming use, the reasoning of the BSA would appropriately conform to the resolution. However, when a zoning resolution uses the word "all”, some quantifiable, actual good-faith use of the property for warehousing or storage cannot logically constitute a showing of a discontinuance of "all”, or even "substantially all” of the active operation of the nonconforming uses. The BSA conceded that Morgan Manhattan actually placed stored goods in the warehouse for the period in question; there was no finding of bad faith or fraud. Therefore, there clearly was some actual good faith in the use of the property for storage, constituting a continuation of the nonconforming uses.
Furthermore, if there is any question as to how much good-faith usage of the property for a nonconforming use constitutes a sufficient amount, any ambiguity in the zoning ordinance must be resolved in favor of the property owner (Matter of Exxon Corp. v Board of Stds. & Appeals, 128 AD2d 289 [1st Dept 1987], lv denied 70 NY2d 614 [1988]).
It is important to recognize in this matter that the landowner had an absolute right to recommence using the property as a warehouse within the two-year period, even if its purpose was simply to protect the property’s status as a nonconforming use (and not to reinstate business operations). Unquestionably, the mere "intent to resume active operations]” is insufficient to establish the resumption of a nonconforming use (Zoning Regulation § 52-61). And, given the absence of the "complete cessation” standard, a truly de minimis use — for instance, placing one box in a warehouse for one day — could constitute an insufficient showing, being instead merely a fraudulent attempt to avoid the effects of an abandonment of a nonconforming use. However, there is no reason why reinstatement of the use must mirror the extent of the use previously made of the *903 premises. In other words, actual good-faith use of the warehouse for storage of goods fulfills the requirement of continuation of a nonconforming use, even if the amount and type of use is far less than that made when a business was being operated in the premises.
The BSA did not find that the warehouse was closed, locked, and vacant, as the neighborhood groups would have it. Rather, it accepted the evidence which indicated that Morgan Manhattan had a full-time employee on-site, was storing some 19 or 20 crates or pallets of property, and had electricity running (albeit about 10% of the company’s normal use while it was operating a full-scale business). It emphasized that these facts were insufficient to support the running of a "legitimate business operation” (see, BSA Resolution, July 18, 1995, at 8).
In contrast to the legal conclusion reached by the BSA, I hold that the proper construction of Zoning Resolution § 52-61, based on the facts as found by the BSA, requires the conclusion reached by the DOB: the nonconforming use was not abandoned for the full two-year period. Active operation of the nonconforming uses does not require a full-scale business operation. A warehouse concededly being used for storage must satisfy that requirement.
Finally, the construction given the Zoning Resolution by the BSA differs from that previously given by the DOB and the BSA. An administrative agency may not rule or act in such a way as to result in inconsistent treatment of similarly situated parties (Matter of Exxon Corp. v Board of Stds. Sc Appeals, 128 AD2d 289 [1st Dept 1987], supra). A decision of an administrative agency which neither adheres to its own prior precedent nor indicates its reason for reaching a different result on essentially the same facts is arbitrary and capricious (Matter of Field Delivery Serv. [Roberts], 66 NY2d 516 [1985]).
Under prior precedent of the Department, as upheld by the BSA, the successful continuation of a nonconforming use may be established by submission of proof of minimal business records (see, 4702/ 4712 Clarendon Rd., Brooklyn, BSA calendar No. 38-92A).
For all the foregoing reasons, the petition is granted, and the determination of the respondent Board of Standards and Appeals is annulled. The DOB permits are reinstated, pursuant to the terms of the stipulation, as initially issued.