■ Toys "R" Us, Respondent, v Gaston Silva, as Chair of the Board of Standards and Appeals of the City of New York, Appellant, Joel A. Miele, Sr., as Commissioner of Buildings of the City of New York, Respondent, and Colette Coffman et al., Intervenors-Appellants. [646 NYS2d 91] —Judgment (denominated an order), Supreme Court, New York County (David Saxe, J.), entered January 22, 1996, which granted petitioner's application pursuant to CPLR article 78 to annul respondent Board of Standards and Appeals' determination revoking the building permit issued by respondent Department of Buildings allowing petitioner to maintain a nonconforming use of the subject premises, affirmed, without costs.

There is no dispute that petitioner's predecessor did maintain some actual nonconforming storage activity in the subject premises, now zoned residential, during the relevant time period. What is disputed is whether the extent of this activity, which was undertaken specifically in order to maintain the use status of the premises during a period that actual business operations had been shifted to other warehouses while this warehouse was being marketed, was sufficient to escape New York City Zoning Resolution § 52-61, which requires reversion to conforming use if, during a continuous two-year period, "the active operation of substantially all the *non-conforming uses* * * * is discontinued." We agree with the IAS Court that it was.

Zoning ordinances must be narrowly interpreted and ambiguities are to be construed against the zoning authority (*Matter of Exxon Corp. v Board of Stds. & Appeals,* 128 AD2d 289, 293, 295-296, *lv denied* 70 NY2d 614). The quantitative approach to the issue taken by the Board of Standards and Appeals—that there must be some numerical threshold in order to invoke the protection of this provision of the Zoning Resolution—does not comport with the plain language of the ordinance, nor is it consistent with the general legislative purpose of this and like ordinances, to avoid the potentially confiscatory effects of subsequent zoning restrictions by allowing uses that were legal prior to the restriction, subject to reasonable conditions, unless there is significant evidence that the use has been abandoned. While the relevant provision of the New York City Zoning Resolution does not harmonize in all respects with like ordinances elsewhere in the State requiring a " 'complete cessation' " of the nonconforming use for a reversion (*Town of Islip v P.B.S. Marina,* 133 AD2d 81, *lv denied* 70 NY2d 611), nevertheless the underlying philosophy is consistent, except that a good faith standard is implicit in this provision. The

Board did not find, nor, upon our independent review of the record, do we find the absence of good faith in what was concededly minimal storage activity.

We adopt the qualitative approach taken by the IAS Court that the Zoning Resolution prohibits termination of a nonconforming use unless it is so token as not to constitute actual use.

If there were a valid basis for finding that the storage use here was not, in good faith, still occurring, and such a finding had been explicitly made, then the Board would have been authorized to revoke the building permit that allowed resumption of nonconforming uses. But that is not what occurred here. That Board did not reject evidence that some 20 or so crates were stored on the premises, or that a manager was hired for the premises. To read the ordinance as authorizing the Board to decide on a case by case basis whether a particular yet undefined level of use qualifies the applicant for a building permit allowing maintenance of nonconforming use would undermine predictability and inject a potential for arbitrariness in the process that is not contemplated by section 52-61. To take the Board's reading of the provision to its logical conclusion, 20 crates might constitute storage under some circumstances, such as in a small building, but not under other circumstances, such as involving the present sizable warehouse. Its conclusion was based, in part, on a square footage evaluation, but no definite ratio was articulated, nor is one provided for in the Zoning Resolution. The very indefiniteness of a reliable standard makes the determination arbitrary. Concur— Rosenberger, J. P., Wallach, Ross and Williams, JJ.

Kupferman, J., dissents in a memorandum as follows: I would reverse and reinstate the determination of the Board of Standards and Appeals ("BSA").

BSA reasonably determined that section 52-61 of the Zoning Resolution of the City of New York requires more than de minimis activity to preserve the right to use zoned property in a nonconforming manner. Additionally, where the bulk of the evidence indicated that Morgan Manhattan's warehouse was out of business since August 1989, BSA's finding that substantially all nonconforming use at the property had ceased for two years was neither unreasonable nor arbitrary. Therefore, that finding should have been upheld (*see, Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal,* 75 NY2d 206, 213).

Citing a judicial preference for a strict interpretation of zoning ordinances (*Matter of Exxon Corp. v Board of Stds. & Ap-*

*peals,* 128 AD2d 289, 296, *lv denied* 70 NY2d 614), the majority interprets section 52-61 so as to prohibit the termination of the nonconforming use of zoned property, unless it is so much a token as to not constitute actual use. However, there is no practical difference between such a standard and one requiring cessation of all nonconforming use before the right to such use is forfeited. Such interpretation, however, overlooks the overriding public policy favoring the reasonable restriction and eventual elimination of nonconforming property uses (*see, Village of Valatie v Smith,* 83 NY2d 396, 400; *Matter of Harbison v City of Buffalo,* 4 NY2d 553, 559-560). Furthermore, it ignores the fact that in section 52-61, the word "all" is modified by the word "substantially".

A basic rule of statutory construction requires that meaning and effect be given to every part and word of the statute (*Matter of Exxon Corp. v Board of Stds. & Appeals, supra,* at 295). By equating section 52-61 with ordinances where the cessation period runs only when "all" nonconforming activity has stopped, the majority renders the word "substantially" in Zoning Resolution meaningless. BSA's interpretation is more reasonable. It gives effect to the modifier "substantially" by requiring more than a de minimis nonconforming activity before tolling the cessation period. The majority suggests that BSA ignored the plain meaning of the Zoning Resolution when all it did was reasonably determine that the meaning of the phrase "substantially all" is something less than "all". The majority would also engage in judicial legislation by engrafting a "good faith" usage standard that appears nowhere in the Zoning Resolution.

Having correctly defined the applicable standard, BSA found that the presence of 20 crates in a warehouse with 2.2 million cubic feet of storage space did not establish that the building was being used for storage in April 1991. That determination was based on an evaluation of all the evidence, which included, *inter alia,* eyewitness testimony that the warehouse was essentially empty and in a state of disrepair, a lack of credible documentation to show the resumption of any activity at the warehouse and an acknowledgment that Morgan Manhattan did not renew the requisite Department of Consumer Affairs license until after the expiration of the two-year period. When viewed in light of this evidence, BSA's decision was neither irrational nor arbitrary and should not have been set aside. [*See,* 167 Misc 2d 897.]