■ In the Matter of PELHAM ESPLANADE, INC., Appellant, v BOARD OF TRUSTEES OF THE VILLAGE OF PELHAM MANOR, Respondent.—In a proceeding pursuant to CPLR article 78 to review a resolution of the Board of Trustees of the Village of Pelham Manor dated September 9, 1987, which denied the application of Pelham Esplanade, Inc. for site plan approval, Pelham Esplanade, Inc. appeals from a judgment of the Supreme Court, Westchester County (Colabella, J.), entered March 10, 1988, which dismissed the proceeding.

Ordered that the judgment is reversed, on the law, without costs or disbursements, and the petition is granted to the extent that the determination is annulled and the matter is remitted to the Board of Trustees of the Village of Pelham Manor for a new determination in accordance herewith.

On April 25, 1984, the only two shareholders of the appellant purchased property in the Village of Pelham Manor, consisting of a single parcel improved with two apartment buildings, for the sum of $340,000. Shortly thereafter the property was conveyed to the appellant. The buildings had been used for multifamily residential purposes for many years prior to the enactment of the Village of Pelham Manor Zoning Ordinance. Although the district is presently zoned for single-family residences, it is undisputed that at the time of purchase the buildings were a legal nonconforming use. Subsequent to this purchase, the appellant expended in excess of $385,000 to repair and renovate the buildings.

The appellant applied to the Board of Trustees of the

Village of Pelham Manor (hereafter the respondent) for site plan approval in connection with its proposed rehabilitation of the buildings and conversion to condominiums. Initially, the respondent denied site plan approval on the ground that the property lost its legal nonconforming use by the discontinuance of such use when the tenants were removed to facilitate renovations and repairs. That determination was annulled by the Supreme Court and the matter was remitted for further consideration. The order of the Supreme Court was affirmed by this court (see, Matter of Pelham Esplanade v Board of Trustees, 126 AD2d 729).

On March 27, 1986, one of the buildings on the subject premises was destroyed by fire. By resolution dated September 9, 1987, the respondent, relying on Village of Pelham Manor Zoning Ordinance § 32 (5) (a), denied the appellant's renewed application for site plan approval on the ground that as a result of the fire damage, the building cannot be repaired or rebuilt or occupied except in conformity with the existing ordinance provisions (as a one-family dwelling).

Village of Pelham Manor Zoning Ordinance § 32 (5) (a) provides that: "No building or structure which has been damaged structurally by fire or other causes to the extent of more than fifty percent of its value, exclusive of foundation, shall be repaired or rebuilt, or thereafter occupied except in conformity with the provisions of this ordinance."

The respondent contends that the nonconforming use of the damaged apartment house had been extinguished by the destruction of that building separate and apart from the other undamaged apartment building on the property. We disagree. In *State ex rel. Covenant Harbor Bible Camp v Steinke* (7 Wis 2d 275, 283-284, 96 NW2d 356, 362) the Supreme Court of Wisconsin considered the effect of the destruction of one of several buildings with regard to loss of nonconforming use, and stated: "The 50 per cent rule, which may be reasonable if applied to one building containing a separate use, may not be reasonable if applied to an individual building used jointly with other buildings in a single non-conforming use upon one premises. * * * In situations of the type suggested the application of the 50 per cent rule to the individual building might well result in a substantial loss of investment out of all proportion to the value of the building destroyed by accident."

In deciding whether the value of the damaged building alone or of all the buildings or structures involved in the nonconforming use should be taken into account to arrive at

the percentage of the property damaged, the test is whether all such buildings or structures are devoted to a "single, integrated, nonconforming use" *(Matter of Bobandal Realties v Worthington,* 21 AD2d 784, 786).

We find that the appellant has satisfied this standard by demonstrating that the two multifamily buildings were used and operated as one complex constituting a single, integrated nonconforming use. The two apartment buildings had been owned and operated for over 40 years as a single complex on one parcel in single ownership, assessed as a single tax lot with common access and parking facilities and managed by one superintendent. The fact that the undamaged structure located on nonconforming property can economically function without the damaged structure is not conclusive *(see, Matter of Richards v Robson,* 41 Misc 2d 850; *State ex rel. Covenant Harbor Bible Camp v Steinke,* 7 Wis 2d 275, 96 NW2d 356, *supra).* The focus is the nature of the use of both structures located on the property. Further, under these circumstances, as in *Krul v Board of Adj.* (122 NJ Super 18, 26, 298 A2d 308, 312, *affd* 126 NJ Super 150, 313 A2d 220), "the ban on reconstruction will result in the practical impairment of his investment in the total business venture not because of the fire but because of the power of government."

Accordingly, we annul the determination of the respondent and remit the matter with the direction that the respondent grant the appellant's application for site plan approval, subject only to such reasonable conditions and safeguards as the respondent may deem advisable to impose. Brown, J. P., Lawrence, Kooper and Spatt, JJ., concur.