*68
 
 OPINION OF THE COURT
 

 Bellacosa, J.
 

 Property owner Pelham Esplanade, Inc. (Esplanade) sought annulment of a determination of the appellant Board of Trustees of the Village of Pelham Manor (Village) denying its application to reconstruct a nonconforming multiple-family dwelling which was destroyed by fire. The dwelling was one of two apartment buildings located on Esplanade’s property. The Board denied the application based on the provision in the Village Zoning Ordinance which prohibits rebuilding a nonconforming structure if it is damaged to the extent of more than 50% of its value. The Board applied this provision to the destroyed building alone rather than to the entire property. Esplanade concedes that more than 50% of the value of the burned building taken alone was destroyed, but claims, without contradiction from the Village, that less than 50% of the value of the combined two-apartment property was destroyed. Esplanade argued that the 50% limitation should be calculated based on the aggregate value of the property because the apartment buildings were historically operated as a single
 
 *69
 
 complex, are on one tax lot, and share parking facilities and access.
 

 Supreme Court was not persuaded by Esplanade’s argument, but the Appellate Division reversed and remitted to the Board with directions to approve Esplanade’s site development plan. The Board appeals to our Court by our grant of leave. We reverse and dismiss the petition. The Board’s determination that the combined apartment property was not devoted to a single, integrated, nonconforming use under the governing ordinance, thus failing to qualify for the narrow exception recognized in
 
 Matter of Bobandal Realties v Worthington
 
 (21 AD2d 784,
 
 affd without opn
 
 15 NY2d 788), was not arbitrary or capricious or an abuse of discretion.
 

 In May 1984, Esplanade became the record owner of two multiple-family, four-story apartment buildings located on a single tax lot in Pelham Manor Village. The previous owners had operated the two buildings as a unit for over 40 years. The multiple-family use is a preexisting, nonconforming carryover in a single-family residential zone.
 

 Esplanade has been engaged in a 5Vi-year struggle with the Village seeking approval to rehabilitate the two buildings and convert them to condominiums. In March 1986, a fire destroyed all but the foundation of one of the two apartment buildings. Esplanade thereafter submitted a site plan application to the Board proposing to rebuild the destroyed building and renovate the undamaged building. Alternatively, Esplanade requested approval of a phased development of the property, beginning with renovation of the undamaged building and the addition of parking garages, parking areas and new access from the adjoining roadway.
 

 The Board denied site plan approval based on section 32 (5) (a) of the Village Zoning Ordinance, which provides:
 

 "Section 32 — General Restrictions.
 

 * * *
 

 "5. Unsafe and Damaged Buildings — (a) No building or structure which has been damaged structurally by fire or other causes to the extent of more than fifty percent of its value, exclusive of foundations, shall be repaired or rebuilt, or thereafter occupied except in conformity with the provisions of this ordinance.”
 

 Supreme Court dismissed Esplanade’s petition, concluding
 
 *70
 
 that Esplanade had failed to prove that the two buildings were "economically interdependent” or that the ban on reconstruction would "result in some practical impairment of the total use,” such that the complex would qualify as a "single, integrated, nonconforming use” under
 
 Bobandal.
 
 The court also concluded that the Board’s denial of the phased development plan had a rational basis because "the plan reflected a different intensity in use of the parcel than would be allowed.”
 

 The Appellate Division’s reversal, now before us, rested essentially on a conclusion that Esplanade had sufficiently demonstrated that the two buildings were devoted to a "single, integrated, nonconforming use” because they were "owned and operated for over 40 years as a single complex on one parcel in single ownership, assessed as a single tax lot with common access and parking facilities and managed by one superintendent.” (154 AD2d 599, 601.) The court read and applied
 
 Bobandal
 
 to require a focus on "the nature of the use of both structures located on the property,” rather than on their economic interdependence as Supreme Court had held
 
 (id.,
 
 at 601).
 

 Esplanade’s burden of persuasion at the outset is high because of the law’s traditional aversion to nonconforming uses: "[T]he policy of zoning embraces the concept of the ultimate elimination of nonconforming uses, and thus the courts favor reasonable restriction of them.”
 
 (Matter of Harbison v City of Buffalo,
 
 4 NY2d 553, 559-560.) Fair and intelligent land use planning tolerates nonconforming uses partly because property owners would otherwise suffer undue financial hardship if precipitously faced with discontinuance of an existing nonconforming use and loss of investment due to rezoning
 
 (People v Miller,
 
 304 NY 105, 108;
 
 Matter of Harbison v City of Buffalo, supra,
 
 at 559). There is, however, no absolute entitlement to reestablishment of a nonconforming use. Where an owner’s investment is extinguished by accidental destruction of the structure which had constituted the nonconforming use, it is not unreasonable thereafter to require compliance with current zoning requirements. The public interest preferring the elimination of nonconforming uses, having been postponed, ripens into actuation
 
 (State ex rel. Covenant Harbor Bible Camp v Steinke,
 
 7 Wisc 2d 275, 96 NW2d 356, 361-362). Thus, courts have accepted municipal land use legislation imposing reasonable restrictions against reestablishing nonconforming uses after substantial destruction, based on some significant percent of value or volume
 
 *71
 
 destroyed
 
 (Matter of Koeber v Bedell,
 
 254 App Div 584,
 
 affd without opn
 
 280 NY 692;
 
 Matter of Bobandal Realties v Worthington,
 
 21 AD2d 784,
 
 affd without opn
 
 15 NY2d 788,
 
 supra).
 
 Disallowing the perpetuation of nonconforming uses at an appropriate point in time and under reasonable regulatory circumstances comports with the law’s grudging tolerance of them in the first instance.
 

 The relevant analysis in
 
 Bobandal
 
 centered on the application of a restoration limitation ordinance to a single building which was part of a larger complex. There, fire had destroyed a large part of the primary country club building which contained a restaurant, bar, housing facilities for employees, and an auditorium. Left undamaged were an outdoor pavilion, swimming pool, snack bar, cabanas, utility buildings, and parking and athletic facilities. The owner’s application for a permit to rebuild the restaurant building was denied. The governing town ordinance forbade the rebuilding of a prior nonconforming structure damaged by fire if the loss exceeded 50% of the volume of the structure above the foundations. The ordinance further required the property owner to obtain a variance for rebuilding. We affirmed the Appellate Division, which rejected the owner’s challenge to the ordinance on facial unconstitutionality grounds. That court said, however, that the issue "should not be decided in a vacuum, but only with relation to a specific case in which facts have been presented to show that
 
 in that case
 
 the application of such criterion would destroy so great a part of the value of the nonconforming property that it would be unreasonable and confiscatory”.
 
 (Matter of Bobandal Realties v Worthington,
 
 21 AD2d,
 
 supra,
 
 at 786 [emphasis in original].) The court added that if the owner applied for a variance, the Board, "in making its computation as to what percentage of the property was damaged by fire, should take into consideration all structures on the property which are devoted to
 
 the single, integrated, nonconforming use”. (Id.,
 
 at 786 [emphasis added].)
 

 The divergent applications of the factually flexible
 
 Bobandal
 
 formulae by the Supreme Court and the Appellate Division in this case reflect some difficulty with this narrow authorization. The Supreme Court assessed the "integrated” nature of the nonconforming use of Esplanade’s property under an "economic interdependence” test, while the Appellate Division advanced a "nature of the use” approach. Neither entirely captures the essence and purpose of the competing applicable land use planning principles and concerns.
 
 *72
 
 Functional interdependence, rather than economic interdependence or nature of the use, is more consonant with the thrust and analysis of
 
 Bobandal.
 
 By that formulation, the public interest in eliminating nonconforming uses at a legally opportunistic time is placed in reasonable balance with the owner’s interest in not having a property investment abruptly altered or terminated.
 

 We note, too, that the fulcrum of functional interdependence has been used in this field by several sibling States
 
 (see, e.g., Krul v Board of Adj.,
 
 122 NJ Super 18, 26, 298 A2d 308, 312,
 
 affd
 
 126 NJ Super 150, 313 A2d 220 [office building was "the hub of the wheel without which the business activity in the spokes — the (storage) buildings — could not turn”];
 
 State ex rel. Covenant Harbor Bible Camp v Steinke,
 
 7 Wisc 2d 275, 96 NW2d 356,
 
 supra
 
 [essential relationship of destroyed individual residence cabin to operation of nonconforming use as a bible camp]).
 

 In the first instance, the question whether a combination of buildings functions as a "single, integrated, nonconforming use” must be resolved by the appropriate local land use planning entity after a factual evidentiary presentation by the owner. The courts, in reviewing zoning board actions, "do not make new or substitute judgments but restrict themselves to ascertaining whether there has been illegality, arbitrariness, or abuse of discretion”.
 
 (Matter of Lemir Realty Corp. v Larkin,
 
 11 NY2d 20, 24;
 
 see,
 
 CPLR 7803 [3].) In this case, the hearing transcripts show that the Board considered the details of the proposed rehabilitation and the history and background of the ownership and use of the two distinct apartment dwelling places, including Esplanade’s purchase of the entire property for $340,000, the $640,00 it spent to improve the entire property, and the $570,000 it received in fire insurance proceeds for the destroyed building. The Board knew that the buildings were on one tax lot, were under single ownership, and were operated as a single complex. With this data, the Board concluded that the buildings were "independent” under
 
 Bobandal
 
 for purposes of applying the over-50% formula restriction of the ordinance. The Board found that there was no reason why the undamaged apartment building could not continue to operate as a nonconforming dwelling use without another nonconforming multiple-family dwelling rising anew next door. This is significantly different from the
 
 Bobandal
 
 property situation and those in the sibling State fact patterns. On the record evidence here, therefore, the Board’s determina
 
 *73
 
 tion to deny site plan approval resurrecting an extinguished nonconforming use may not be disturbed under our standard of judicial review. It is not arbitrary, capricious or an abuse of discretion.
 

 We have examined Esplanade’s remaining arguments and conclude they are without merit.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
 

 Order reversed, etc.