OPINION OF THE COURT
 

 Simons, J.
 

 This appeal challenges the facial validity of chapter 85 of the Village Code of the Village of Valatie, a local law that terminates the nonconforming use of a mobile home upon the transfer of ownership of either the mobile home or the land upon which it sits. Defendant argues that it is unconstitutional for the Village to use a change in ownership as the termination date for a nonconforming use. We conclude, however, that defendant has failed to carry her burden of showing that the local law is unreasonable on its face. Accordingly, we modify the order of the Appellate Division by denying defendant’s cross motion for summary judgment.
 

 In 1968, the Village enacted chapter 85 to prohibit the placement of mobile homes outside mobile home parks. Under the law, any existing mobile home located outside a park which met certain health standards was allowed to remain as a nonconforming use until either ownership of the land or ownership of the mobile home changed. According to the
 
 *399
 
 Village, six mobile homes, including one owned by defendant’s father, fell within this exception at the time the law was passed.
 

 In 1989, defendant inherited the mobile home from her father and the Village instituted this action to enforce the law and have the unit removed. Both the Village and defendant moved before Supreme Court for summary judgment. The court granted defendant’s motion and denied the Village’s. The court characterized defendant’s mobile home as a lawful nonconforming use — i.e., a use that was legally in place at the time the municipality enacted legislation prohibiting the use. Reasoning that the right to continue a nonconforming use runs with the land, the court held that the portion of the ordinance setting termination at the transfer of ownership was unconstitutional. The Appellate Division affirmed. The Court acknowledged that a municipality had the authority to phase out a nonconforming use with an "amortization period”, but it concluded that this particular law was unreasonable, and therefore unconstitutional, because the period of time allowed "bears no relationship to the use of the land or the investment in that use”. (190 AD2d 17, 20.)
 

 Preliminarily, it is important to note that the question presented is the facial validity of the local law. The Court is not called upon to decide whether the local law os
 
 applied
 
 so deprived defendant of the value of her property as to constitute a governmental taking under the Fifth Amendment. Nor does defendant challenge the power of a municipality to regulate land use, including the placement of mobile homes, as a valid exercise of the police power
 
 (see, e.g., Mobile Home Owners Protective Assoc. v Town of Chatham,
 
 33 AD2d 78;
 
 see generally,
 
 1 Anderson, New York Zoning Law and Practice, ch 15 [3d ed]). Finally, there is no question that municipalities may enact laws reasonably limiting the duration of nonconforming uses
 
 (see, Matter of Pelham Esplanade v Board of Trustees,
 
 77 NY2d 66;
 
 Matter of Town of Islip v Caviglia, 73
 
 NY2d 544;
 
 Modjeska Sign Studios v Berle,
 
 43 NY2d 468,
 
 appeal dismissed
 
 439 US 809;
 
 Matter of Harbison v City of Buffalo, 4
 
 NY2d 553;
 
 City of Los Angeles v Gage,
 
 127 Cal App 2d 442, 274 P2d 34).
 
 [1]
 

 
 *400
 
 Thus, the narrow issue is whether the Village acted unreasonably by establishing an amortization period that uses the transfer of ownership as an end point.
 

 The policy of allowing nonconforming uses to continue originated in concerns that the application of land use regulations to uses existing prior to the regulations’ enactment might be construed as confiscatory and unconstitutional (4 Rathkopf, Zoning and Planning § 51.01 [2] [b], at 51-6 [Ziegler 4th ed]). While it was initially assumed that nonconforming uses would disappear with time, just the opposite proved to be true in many instances, with the nonconforming use thriving in the absence of any new lawful competition
 
 (Matter of Harbison v City of Buffalo, 4
 
 NY2d 553, 560,
 
 supra).
 
 In light of the problems presented by continuing nonconforming uses, this Court has characterized the law’s allowance of such uses as a "grudging tolerance”, and we have recognized the right of municipalities to take reasonable measures to eliminate them
 
 (see, Matter of Pelham Esplanade v Board of Trustees,
 
 77 NY2d 66, 71,
 
 supra).
 

 Most often, elimination has been effected by establishing amortization periods, at the conclusion of which the nonconforming use must end. As commentators have noted, the term "amortization period” is somewhat misleading
 
 (see, e.g., 4
 
 Rathkopf, Zoning and Planning § 51B.05 [1], at 51B-44, n 3 [Ziegler 4th ed]). "Amortization” properly refers to a liquidation, but in this context the owner is not required to take any particular financial step. "Amortization period” simply designates a period of time granted to owners of nonconforming uses during which they may phase out their operations as they see fit and make other arrangements
 
 (id.; see also, Art Neon Co. v City & County of Denver,
 
 488 F2d 118, 121 [5th Cir],
 
 cert denied
 
 417 US 932). It is, in effect, a grace period, putting owners on fair notice of the law and giving them a fair opportunity to recoup their investment
 
 (Modjeska Sign Studios v Berle,
 
 43 NY2d 468, 479,
 
 supra; Art Neon Co. v City & County of Denver, supra,
 
 at 121). Though the amortization period is typically discussed in terms of protecting the owners’ financial interests, it serves more generally to protect "an individual’s interest in maintaining the present use” of the property
 
 (Modjeska Sign Studios v Berle, supra,
 
 at 479).
 

 The validity of an amortization period depends on its reasonableness
 
 (Matter of Harbison v City of Buffalo, 4
 
 NY2d 553, 562-563,
 
 supra).
 
 We have avoided any fixed formula for deter
 
 *401
 
 mining what constitutes a reasonable period. Instead, we have held that an amortization period is presumed valid, and the owner must carry the heavy burden of overcoming that presumption by demonstrating that the loss suffered is so substantial that it outweighs the public benefit to be gained by the exercise of the police power
 
 (Matter of Town of Islip v Caviglia,
 
 73 NY2d 544, 561,
 
 supra; Modjeska Sign Studios v Berle, supra,
 
 at 480). Using this approach, courts have declared valid a variety of amortization periods
 
 (see,
 
 6 Rohan, Zoning and Land Use Controls § 41.04 [2], at 41-158). Indeed, in some circumstances, no amortization period at all is required
 
 (see, New York State Thruway Auth. v Ashley Motor Ct.,
 
 10 NY2d 151;
 
 People v Miller,
 
 304 NY 105). In other circumstances, the amortization period may vary in duration among the affected properties
 
 (see, Matter of Town of Islip v Caviglia, supra).
 
 We have also held that an amortization period may validly come to an end at the occurrence of an event as unpredictable as the destruction of the nonconforming use by fire
 
 (see, Matter of Pelham Esplanade v Board of Trustees,
 
 77 NY2d 66,
 
 supra).
 

 Defendant here does not challenge the local law’s constitutionality under our established balancing test for amortization periods — i.e., whether the individual loss outweighs the public benefit. Instead, the challenge is a more basic due process claim: that the means of eliminating nonconforming uses is not reasonably related to the Village’s legitimate interest in land use planning. More particularly, defendant makes two arguments: first, that the length of an amortization period must be related either to land use objectives or to the financial recoupment needs of the owner and, second, that the local law violates the principle that zoning is to regulate land use rather than ownership
 
 (see, Matter of Dexter v Town Bd.,
 
 36 NY2d 102). Neither argument withstands analysis.
 

 We have never required that the length of the amortization period be based on a municipality’s land use objectives. To the contrary, the periods are routinely calculated to protect the rights of individual owners
 
 at the temporary expense of
 
 public land use objectives. Typically, the period of time allowed has been measured for reasonableness by considering whether the owners had adequate time to recoup their investment in the use
 
 (see, e.g., Modjeska Sign Studios v Berle,
 
 43 NY2d 468, 474,
 
 supra; accord, Matter of Town of Islip v Caviglia,
 
 73 NY2d 544, 561,
 
 supra).
 
 Patently, such protection of an individual’s interest is unrelated to land use objectives.
 
 *402
 
 Indeed, were land use objectives the only permissible criteria for scheduling amortization, the law would require immediate elimination of nonconforming uses in all instances. Instead, the setting of the amortization period involves balancing the interests of the individual and those of the public. Thus, the real issue here is whether it was irrational for the Village, in striking that balance, to consider a nonfinancial interest of the individual owners — specifically, the individual’s interest in not being displaced involuntarily.
 

 It is significant that the six properties involved here are residential. In our previous cases dealing with amortization, we have focused almost exclusively on commercial properties, where the owner’s interest is easily reduced to financial considerations. The same may not be true for the owners of residential properties, especially in instances where the property is the primary residence of the owner. Simply being able to recoup one’s financial investment may be a secondary concern to staying in a neighborhood or remaining on a particular piece of land. Indeed, when mobile homes are involved, there may actually be little or no financial loss, given that the owner often will be able to relocate the structure and sell the land for legal development. Here, rather than focusing solely on financial recoupment, the Village apparently took a broader view of "an individual’s interest in maintaining the present use” of the property
 
 (see, Modjeska Sign Studios v Berle,
 
 43 NY2d 468, 479,
 
 supra; see also, Matter of Taksen Liq. Store v Bonisteel,
 
 103 Misc 2d 34). It enacted a law that allowed owners to keep their mobile homes in place until they decided to sell, even though they may have recouped their investment long ago. By doing so, it saved the owners from a forced relocation at the end of a predetermined amortization period set by the Village. Defendant has not demonstrated why such an approach is irrational or explained why a municipality should be barred constitutionally from considering the nonfinancial interests of the owners in setting an amortization schedule. Thus, on this motion for summary judgment and the present record, defendant has failed to overcome the presumption of the law’s validity and prove, as she must, unconstitutionality beyond a reasonable doubt
 
 (McMinn v Town of Oyster Bay,
 
 66 NY2d 544, 548;
 
 Northern Westchester Professional Park Assocs. v Town of Bedford,
 
 60 NY2d 492, 500).
 

 Equally unavailing on this facial challenge is defendant’s contention that the law might prevent some owners from
 
 *403
 
 recouping their investment. Defendant raises the hypothetical concern that in some circumstances owners might not have adequate time to recoup — for instance, if a sale took place shortly after the law’s enactment. Whatever the validity of that concern, it is not relevant to this facial challenge to the law. Defendant has not claimed that she was so injured, and her argument must fall to the general principle that a litigant cannot sustain a facial challenge to a law when that law is constitutional in its application to that litigant
 
 (see, People v Parker,
 
 41 NY2d 21, 24;
 
 cf., Broadrick v Oklahoma,
 
 413 US 601, 610).
 

 Defendant’s second argument is premised on the "fundamental rule that zoning deals basically with land use and not with the person who owns or occupies it”
 
 (Matter of Dexter v Town Bd.,
 
 36 NY2d 102, 105,
 
 supra).
 

 [2]
 

 In essence, the rule is a prohibition against
 
 ad hominem
 
 zoning decisions. In
 
 Dexter,
 
 for instance, a zoning change needed to allow a supermarket was to be effective only if a certain corporation developed the site. We voided the action on the ground that the identity of the site’s owner was irrelevant to its suitability for a certain type of development. Likewise, variances to accommodate the personal physical needs of the occupants have been denied on the basis that such needs are unrelated to land use
 
 (see, Matter of Fuhst v Foley,
 
 45 NY2d 441). In the present case, defendant claims that the Village’s amortization scheme is similarly personal in that the right to the nonconforming use is enjoyed only by those who owned the property in 1968 and cannot be transferred.
 

 Defendant misconstrues the nature of the prohibition against
 
 ad hominem
 
 zoning. The hallmark of cases like
 
 Dexter
 
 and
 
 Fuhst (supra)
 
 is that an identifiable individual is singled out for special treatment in land use regulation. No such individualized treatment is involved in the present case. All similarly situated owners are treated identically. The same is true for all prospective buyers. The only preferential treatment identified by defendant is that the owner in 1968 has rights that no future owner will enjoy. But the law has long recognized the special status of those who have a preexisting use at the time land controls are adopted. Indeed, the allowance of a nonconforming use in the first instance is based on
 
 *404
 
 that recognition. To the extent that defendant’s argument is an attack on special treatment for the owners of nonconforming uses it flies in the face of established law.
 

 In fact, what defendant is actually arguing is that the Village should not be allowed to infringe on an owner’s ability to transfer the right to continue a nonconforming use
 
 (see, O’Connor v City of Moscow,
 
 69 Idaho 37, 202 P2d 401). It is true that, in the absence of amortization legislation, the right to continue a nonconforming use runs with the land
 
 (Matter of Bexson v Board of Zoning & Appeals,
 
 28 AD2d 848,
 
 affd
 
 21 NY2d 961;
 
 Matter of Iazzetti v Village of Tuxedo Park,
 
 145 Misc 2d 78;
 
 see also,
 
 4 Rathkopf, Zoning and Planning § 51.03 [1], at 51-42 [Ziegler 4th ed]). However, once a valid amortization scheme is enacted, the right ends at the termination of the amortization period. As a practical matter, that means the owner of record during the amortization period will enjoy a right that cannot be transferred to a subsequent owner once the period passes. In such circumstances, the law is not rendered invalid because the original owner no longer has a right to transfer or because the original owner and subsequent owners have received disparate treatment under the land use regulations.
 

 Here, of course, the absence of the right at the time of transfer is not left to the happenstance of when the owner decides to sell but is an explicit part of the legislative plan. But that difference does not change the test for the validity of an amortization period. The test remains whether the period unreasonably inflicts a substantial loss on the owner or fails to comport to the reasonableness required by due process. Put simply, there is no independent requirement that the right to continue the nonconforming use be available for transfer at a given time. That is true whether the right to continue the nonconforming use is terminated by the passage of time, destruction of the use, abandonment or, as here, transfer of ownership. Thus, the mere fact that the right cannot be transferred or that later owners are treated disparately from the original owner is insufficient to sustain defendant’s facial challenge to the ordinance.
 

 Nor can we subscribe to the Appellate Division’s theory that the amortization period here is unreasonable because it may be too long. In the Appellate Division’s view, an open-ended amortization schedule does not reasonably advance land use objectives. The Appellate Division noted that if a corporation
 
 *405
 
 owned one of the mobile homes here, the amortization period would be limitless in theory. The Village answers by stating that all six mobile homes were owned by individuals, and thus amortization would end, at the latest, upon their deaths. Because the class of nonconforming users became closed at the law’s enactment and will never contain more than those six, the concern about corporate ownership is unfounded, the Village argues. At this point in the litigation, defendant has not demonstrated that the Village is factually in error as to the ownership of the six units.
 

 Of greater concern to us, the Appellate Division’s rationale would seriously undermine the law of nonconforming uses. Amortization periods are the exceptions; in the absence of such schemes, owners of nonconforming uses are free to continue the uses indefinitely and transfer them to successor owners. Were the Appellate Division’s rationale accepted, amortization periods would be
 
 required
 
 to avoid the problem of indefinite continuation of nonconforming uses. Amortization periods have never been mandatory as a matter of constitutional law, and consequently we must reject the Appellate Division’s reasoning.
 

 Thus, we conclude that defendant has failed to prevail on her facial challenge to the Village law. As to the remaining issues raised, further factual development is necessary.
 

 Accordingly, the order of the Appellate Division should be modified, without costs, by denying defendant’s cross motion for summary judgment and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine and Ciparick concur; Judge Titone taking no part.
 

 Order modified, without costs, by denying defendant’s cross motion for summary judgment and, as so modified, affirmed.
 

 [1]
 

 . Though the difference between a nonconforming use and a nonconforming structure will at times be relevant
 
 (see, Matter of Harbison v City of Buffalo,
 
 4 NY2d 553, 561-562,
 
 supra),
 
 our reasoning in this case applies equally whether the mobile home is characterized as a use or a structure.
 

 [2]
 

 . In attempting to distinguish
 
 Dexter,
 
 the Village notes that its local law was simply an exercise of its police power and not "zoning”. The distinction is irrelevant in this context.