■ In the Matter of TISHA WARNER, Respondent, v TOWN OF KENT ZONING BOARD OF APPEALS et al., Appellants. [40 NYS3d 517]—

In a proceeding pursuant to CPLR article 78 to review a determination of the Town of Kent Zoning Board of Appeals dated May 21, 2012, which, after a hearing, affirmed the Town Building Inspector's denial of the petitioner's application for a

building permit, the appeal is from a judgment of the Supreme Court, Putnam County (Nicolai, J.), dated May 13, 2014, which granted the petition, annulled the determination, and directed the Town Building Inspector to issue a building permit.

Ordered that the judgment is reversed, on the law, with costs, the petition is denied, and the proceeding is dismissed.

Since 2000, the petitioner, Tisha Warner, has owned a parcel of land on Lakeshore Drive East in the Town of Kent. Until February 2010, a single-family residence was located on the property. The residence was not in conformity with the Town's zoning ordinance but was protected as a preexisting "nonconforming building[ ]" under the Code of the Town of Kent (hereinafter the Town Code) § 77-47 (A). The petitioner's father, Robert Sprague, resided in the residence. On February 3, 2010, a fire destroyed most of the residence. Shortly after the fire, the Town Fire Inspector sent the petitioner a letter detailing the damage. In that letter, the Fire Inspector informed the petitioner that he would recommend to the Town Building Department that the residence be condemned and removed. He also said that he had met with Sprague and advised him to contact the Building Department to obtain a demolition permit and begin the process of obtaining permits to rebuild. the residence.

At all relevant times in this matter, the Town Code provided that the petitioner had the right to rebuild the nonconforming residence, but only if she completed the rebuilding within one year after the fire: "A noncomplying principal building shall not be reestablished in its noncomplying location nor restored in other than a complying location after such building shall have been damaged, which damage shall exceed 75% of its bulk or square footage, *unless such restoration is completed within one year from the date of such destruction*" (Town Code former § 77-48 [A] [emphasis added]). It is undisputed that the damage to the residence exceeded the 75% threshold. Thus, the petitioner had the right to rebuild the residence, so long as she completed the rebuilding by February 3, 2011.

The petitioner and Sprague became involved in a dispute with their insurance company, which had canceled their homeowner's insurance policy for lack of payment. The petitioner did not apply for a demolition permit until November 4, 2010, nine months after the fire. The demolition permit was granted that day. The demolition was completed on December 26, 2010. On January 21, 2011, two weeks before the one-year rebuilding period expired, the Putnam County Department of Health approved what it described as the petitioner's plans for

a "proposed addition" to the residence, but cautioned that its approval was "for the proposed changes only," and that "[a]ny other permits or variances required are the responsibility of the applicant and the jurisdiction of the Town of Kent." On the same day that the Department of Health issued its approval, Sprague filed an application for a building permit, but the Town Building Inspector allegedly told him that she would not review the application until a site survey and plans signed by an architect were also submitted. Sprague hired a surveyor on February 1, 2011, two days before the expiration of the one-year rebuilding period. The survey was not completed until April 2011. On October 26, 2011, almost 21 months after the fire, and almost nine months after the one-year rebuilding period expired, the petitioner filed a complete application for a building permit. The Building Inspector denied the application on the ground that the one-year rebuilding period had already expired.

On November 4, 2011, the petitioner, acting through Sprague, filed a one-page form labeled a "Request for Hearing/ Application for Variance" with the Town Zoning Board of Appeals (hereinafter the ZBA). Although the November 2011 application was labeled as one for a "variance," it did not seek the area variances that would be necessary to allow the petitioner to rebuild her house in its original location after her one-year period to rebuild as of right pursuant to Town Code § 77-48 (A) had expired. Rather, the November 2011 application sought, in essence, to extend the petitioner's one-year period to rebuild pursuant to Town Code § 77-48 (A). Sprague subsequently appeared before the ZBA on December 16, 2011, and presented plans for a modular house with the same footprint as the original house, but with a second floor that had not been part of the original residence. Sprague told the ZBA that he had a power of attorney from the petitioner, who was in the process of deeding the property to him.

The matter was on the agenda at several ZBA meetings between December 16, 2011, and May 21, 2012. During those meetings, Sprague, ZBA members, and concerned neighbors referenced the Building Inspector's denial of the application for a building permit under the one-year rebuilding provision of Town Code § 77-48 (A). They also, however, referred generally to a "variance." At the ZBA meeting on May 21, 2012, Sprague provided an account of the events since the fire and the reasons for the delay in rebuilding the residence beyond the one-year period of Town Code § 77-48 (A). Sprague asserted that the delay was attributable to the dispute with the insurance

company, the State Insurance Department's investigation into that dispute, and the unhelpfulness of the Building Inspector.

Near the end of the proceeding on May 21, 2012, a ZBA member moved to affirm the Building Inspector's October 26, 2011, denial of the application for a building permit. The ZBA member said that "the only question before the ZBA was whether or not the Building Inspector should have denied the building permit," and he moved to affirm that denial. The ZBA Chairman stated that the record supported the conclusion that the application for the building permit had been filed more than one year after the residence had been destroyed. He stated that the ZBA would be "effectively rewriting" Town Code § 77-48 (A) if it were to grant the application for the building permit. Sprague asked whether he would be able to apply for a variance to build a new house with a different footprint. The ZBA Chairman answered that he could, but he would face challenges. Sprague then asked if he could "put the variance on hold," and the ZBA Chairman replied that "the Zoning Board would like to resolve the issues at hand at this meeting and it wouldn't affect Mr. Sprague's ability to reapply." The ZBA then voted on, and approved, the motion to affirm the Building Inspector's denial of the building permit.

In its written decision, which was dated May 21, 2012, and filed with the Town Clerk on June 1, 2012, the ZBA found, among other things, that the petitioner had filed an application for a building permit on January 21, 2011, but that the application was "rejected" because it "lacked basic elements like building plans, a survey, etc." The ZBA also found that a complete application for a building permit had not been submitted until "[n]early eight months after the initial year had lapsed," and that the Building Inspector denied it on that ground. The ZBA noted that, "according to the [Town] Code, if the homeowner wants to restore the noncomplying structure in the same location, the restoration must be *completed within one year*." It pointed out that, "[h]ere, the applicant merely submitted an incomplete application for a building permit prior to the one-year expiration." The ZBA summarized the petitioner's contentions regarding the reasons for the delay in seeking to rebuild, most notably the dispute with the insurance company, but stated that the documents submitted in connection with the application "disclosed another story." The ZBA concluded: "It is the opinion of this Board that the mere filing of an application is not enough to satisfy the [Town] Code's specific requirement to completely restore the non-complying building within one year. . . . Therefore, it is the opinion of

the Board that the building inspector's decision was reasonable and the Board affirms her denial of a building permit." The ZBA's written decision focused entirely on whether the Building Inspector had correctly applied Town Code § 77-48 (A), and did not consider the issue of whether the ZBA should exercise its discretion to grant the area variances that would be necessary to allow the petitioner to rebuild after the expiration of the one-year period to rebuild as of right.

After receiving the ZBA's written decision, the petitioner timely commenced this proceeding pursuant to CPLR article 78 to review the ZBA's determination. She contended that the ZBA's determination upholding the Building Inspector's October 2011 denial of the building permit was arbitrary and capricious, lacked a rational basis, and constituted an abuse of discretion.

In a judgment dated May 13, 2014, the Supreme Court stated that the petitioner had made "diligent, continuous efforts to comply with every directive of the Building Inspector in moving forward with the permit application process," and it concluded that, "under these unique circumstances," the ZBA's finding that the petitioner's "hardship was self-created lack[ed] a rational basis." The court granted the petition, annulled the ZBA's determination, and directed the Building Inspector to issue the building permit. The court did not address whether the ZBA had correctly interpreted the Town Code, or whether it was estopped from enforcing it.

The respondents, the Town and the ZBA, appeal. We reverse.

Before we discuss the issues raised on this appeal, we note that in October 2013, while the petition was pending in the Supreme Court, Town Code § 77-48 (A) was amended to change the one-year period for rebuilding noncomplying structures to two years (see Local Law No. 4-2013 of Town of Kent [eff Sept. 1, 2013]). This amendment is not relevant to the issues raised on this appeal.

We further note our disagreement with our dissenting colleague's conclusion that a plain reading of the petitioner's November 2011 application demonstrates that it sought area variances as an alternative to the request for an extension of the one-year period to rebuild as of right pursuant to Town Code § 77-48 (A). Indeed, the petitioner made clear in this CPLR article 78 proceeding that she did not seek a variance of any kind from the ZBA. In Sprague's affidavit in support of the petition, he focused entirely on the one-year rule of Town Code § 77-48 (A), and did not mention that any request for a variance had been made. In a memorandum of law in support of

her petition, the petitioner expressly stated that she had sought no variance from the ZBA: "a plain sense reading of the application makes clear that it was not one for area variances, but rather one for a determination that Respondent Town of Kent was estopped from enforcing the one year period of limitations contained in Section 77-48 (A) by virtue of the Building Inspector's actions and inaction. . . . Petitioner did not seek a variance of Section 77-48; rather, she sought an interpretation and determination that Respondent Town should be estopped from enforcing the limitation contained in Section 77-48 as a result of the Building Inspector's conduct." Moreover, as we have noted, the ZBA did not consider the issue of whether it should exercise its discretion to grant the petitioner area variances. Accordingly, the issue of whether the petitioner should be granted area variances to permit her to rebuild is not properly before us on this appeal.

The Town Code provides that the ZBA "shall make such order, requirement, decision, interpretation or determination as in its opinion ought to have been made in the matter by the administrative official charged with the enforcement of this chapter, and to that end shall have all the powers of the administrative official from whose order, requirement or decision the appeal is taken" (Town Code § 77-57 [A]). Thus, the ZBA was authorized to make whatever determination the Building Inspector should have made in the first instance. The ZBA determined that the petitioner's application for a building permit was correctly denied.

Judicial review of a determination of a zoning board of appeals is limited to ascertaining whether the board's action was illegal, arbitrary and capricious, or an abuse of discretion (*see Matter of Ogden Land Dev., LLC v Zoning Bd. of Appeals of Vil. of Scarsdale*, 121 AD3d 695, 696 [2014]). To the extent that the petitioner contended that the Building Inspector had no basis to reject her permit application in January 2011, her challenge is without merit. The Building Inspector rejected that application because it was incomplete. It lacked, among other things, a survey. The petitioner did not assert that her application was in fact complete, but only that Sprague had not been told that a survey was needed.

The ZBA's affirmance of the October 2011 denial of the complete application for a building permit was based on its interpretation of Town Code § 77-48 (A) as then in effect. Since the interpretation of the terms of that section involves a pure legal interpretation of statutory terms, we do not defer to the ZBA's interpretation, but instead make an independent review

of the law (*see Matter of New York Botanical Garden v Board of Stds. & Appeals of City of N.Y.*, 91 NY2d 413, 419-420 [1998]; *Matter of Teachers Ins. & Annuity Assn. of Am. v City of New York*, 82 NY2d 35, 41-42 [1993]; *Matter of BBJ Assoc., LLC v Zoning Bd. of Appeals of Town of Kent*, 65 AD3d 154, 160 [2009]). We conclude that the ZBA correctly interpreted the then-current version of Town Code § 77-48 (A). Indeed, the provision "could not be clearer" (*Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98, 103 [1997]); it enunciated a strict one-year limit for *completion* of the rebuilding of a destroyed nonconforming residence. Thus, the ZBA's affirmance of the denial of the October 2011 permit application was a correct interpretation of the law. The ZBA correctly concluded that it was not authorized to disregard that clear language.

The Supreme Court and our dissenting colleague read Town Code § 77-48 (A) as allowing a good-cause extension of the applicable time limit to complete rebuilding a destroyed structure. We disagree, because that reading is inconsistent with the clear and unequivocal language of the provision itself. Unlike ordinances that provide for discretionary extensions of time to restore a destroyed nonconforming building (*see e.g.* Code of Town of Niskayuna § 220-55; Code of Town of North Castle § 355-67 [C] [2]), the Town Code's mandatory provision—which stated that a nonconforming building "shall not be reestablished . . . unless such restoration is completed within one year from the date of such destruction"—neither said nor implied that the ZBA was vested with discretionary authority to extend the time limit. Indeed, the Town Code states that "[t]he word 'shall' is always mandatory and not merely directory" (Town Code § 77-64 [F]; *see Matter of Exxon Corp. v Board of Stds. & Appeals of City of N.Y.*, 128 AD2d 289, 293-294 [1987]; *see generally* Patricia E. Salkin, 1 New York Zoning Law & Practice § 10:40).

The petitioner's only claim, as she specifically stated in a memorandum of law, was that the ZBA was estopped from enforcing the one-year limit, not that the ZBA misinterpreted it. Generally, the doctrine of estoppel is not available against a governmental agency to prevent it from discharging its statutory duties, even when the results are harsh (*see Matter of Parkview Assoc. v City of New York*, 71 NY2d 274, 282 [1988]; *Laws Constr. Corp. v Town of Patterson*, 135 AD3d 830, 830 [2016]; *F.A.S.A. Constr. Corp. v Village of Monroe*, 14 AD3d 532, 533 [2005]). Exceptions to the general rule may be warranted in "unusual factual situations to prevent injustice" (*Matter of E.F.S. Ventures Corp. v Foster*, 71 NY2d 359, 369 [1988]

[internal quotation marks omitted]), but only in the "rarest cases" (*Matter of Parkview Assoc. v City of New York*, 71 NY2d at 282; *see e.g. Matter of Faymor Dev. Co. v Board of Stds. & Appeals of City of N.Y.*, 45 NY2d 560, 565-566 [1978]).

This is not one of those rare cases. Nothing that the Building Inspector may have done or said misled the petitioner into failing to comply with Town Code § 77-48 (A) (*see Cymbidium Dev. Corp. v Smith*, 133 AD2d 605, 608 [1987]). Indeed, in submitting only an incomplete application just two weeks before the one-year restoration period expired, the petitioner could not reasonably have thought that a site survey was unnecessary. The requirement of a survey is clearly stated in the Town Code (*see* Town Code § 27-8 [D]), as well as on the first page of the building permit application form.

The Supreme Court's decision and the dissent accept the truth of the petitioner's averments, and overlook evidence in the record that raises questions as to the accuracy of those averments. Nonetheless, even assuming the truth of the petitioner's averments, we conclude that the ZBA was not estopped from enforcing the one-year time limit then existing under Town Code § 77-48 (A) (*see Matter of Parkview Assoc. v City of New York*, 71 NY2d at 282).

Accordingly, we conclude that the ZBA's determination affirming the Building Inspector's rejection of the incomplete application for a building permit in January 2011 and her denial of the untimely application in October 2011 was not arbitrary and capricious, illegal, or an abuse of discretion (*see* CPLR 7803 [3]; *Matter of Spicer v Holihan*, 158 AD2d 459, 459-460 [1990]; *Matter of Smith v Town of Penfield*, 115 AD2d 262, 262-263 [1985]; *Matter of Swartz v Wallace*, 87 AD2d 926, 928-929 [1982]; *cf. Matter of Raritan Dev. Corp. v Silva*, 91 NY2d at 104-105; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 62 NY2d 539, 545 [1984]).

The petitioner's assertion that the application of the then-existing version of Town Code § 77-48 to the subject property resulted in an unconstitutional taking without compensation is not ripe for review, since she failed to establish that she exhausted her administrative remedies by applying for a variance (*see Matter of Parkview Assoc. v City of New York*, 71 NY2d at 283; *Matter of BBJ Assoc., LLC v Zoning Bd. of Appeals of Town of Kent*, 65 AD3d at 157 n 1; *Dick's Quarry v Town of Warwick*, 293 AD2d 445, 445-446 [2002]).

Finally, we note that the petitioner is not precluded from applying for the area variances that would be necessary to allow her to rebuild her house (*see* Town Law § 267-b; *Matter of*

*Smith v Town of Penfield*, 115 AD2d at 263). We express no opinion as to whether such area variances should be granted. Balkin, J.P., Roman and Connolly, JJ., concur.

Maltese, J., dissents, and votes to affirm the judgment, with the following memorandum: The appellant Town of Kent Zoning Board of Appeals (hereinafter the ZBA) has acted most unreasonably, arbitrarily, and capriciously in this matter and has abused its discretion in denying the petitioner a building permit to restore her home after it was destroyed by a fire. Accordingly, I dissent and vote to affirm the judgment of the Supreme Court, Putnam County.

Since the year 2000, the petitioner, Tisha Warner, has been the owner of the subject house located at 236 Lakeshore Drive East in the Town of Kent, Putnam County. The property lies in a residential zoning district in the hamlet of Lake Carmel and is situated along the shore of Lake Carmel. The single-family house, which was built in the 1940s, is a preexisting nonconforming (or "noncomplying") building because the lot is smaller than is allowed under the current zoning ordinances.

The petitioner's father, Robert Sprague, lived in the house before it was destroyed by a fire on February 3, 2010. The Lake Carmel Fire Department responded to the fire, but could not save the house. The Town Fire Inspector recommended that the house be condemned and removed because of significant structural damage. Thereafter, the petitioner relinquished all rights and responsibilities to the subject property to Sprague and granted him power of attorney, as reflected in a letter to the ZBA dated November 14, 2011.

The Zoning Code Provision

As stated by the majority, at the time of the fire, Code of the Town of Kent (hereinafter the Town Code) § 77-48 (A) permitted reconstruction of a noncomplying principal building in its noncomplying location after the building was damaged in excess of 75% of its bulk or square footage, if reconstruction was "completed within *one year* from the date of such destruction" (emphasis added). There is no dispute that the fire exceeded 75% of the bulk or square footage of the house.

But during the pendency of this matter, the Town amended Town Code § 77-48 (A) to expand the one-year limit into a more reasonable *two-year* limit on the right to rebuild a house substantially destroyed by fire in its noncomplying location.

The Homeowner's Insurance Dispute

The Supreme Court took cognizance of the reasons for the delay in rebuilding the house destroyed by fire within the

unreasonable one-year time limit. In June 2009, about seven months before the fire, the petitioner and Sprague obtained a one-year homeowner's insurance policy through a local insurance agency located in the neighboring Town of Carmel. However, the policy was canceled prior to the fire due to alleged nonpayment. Sprague maintained that he made payments towards the policy in person at the insurance agency, but that an incorrect address was on file for him, and he never received a cancellation notice. Notably, the policy's declaration page contains what appears to be an incorrect address for the subject property, 236 East Lake Dr., Kent Lakes, NY, 10512, instead of the correct address, 236 Lakeshore Drive East, Kent, NY, 10512. Although the street number and zip code are correct, the street name and town are wrong. Moreover, the locale, "Kent Lakes," is ambiguous at best. The house is located in the hamlet of Lake Carmel in the Town of Kent. Kent Lakes appears to be a different neighborhood near the hamlet of Lake Carmel. Hence, the petitioner had a reasonable dispute with the insurance carrier, which she pursued as she did not have sufficient funds to rebuild the house without the insurance proceeds.

On March 2, 2010, less than one month after the fire, the petitioner contacted the New York State Insurance Department, which conducted an investigation. On June 25, 2010, after much correspondence with the petitioner, the Insurance Department advised the petitioner that the dispute "over the policy address gives rise to questions of fact which this Department is without authority to decide. Such issues, by their very nature, can only be decided by a court having jurisdiction." However, the Insurance Department further advised that the investigation was still ongoing and the petitioner should not demolish the remainder of the house until the investigation was complete. In accordance with this advice, the petitioner did not proceed to demolish what was left of the house until the insurance investigation was complete. Unfortunately, this delay resulted in violations being placed on the premises due to complaints from neighbors.

The Petitioner's Continued Efforts to Rebuild

In July 2010, while waiting for the completion of the Insurance Department's investigation, the petitioner made inquiries about placing a modular home on the property. On November 4, 2010, after the insurance investigation was complete, the pro se petitioner applied for a demolition permit. The Town Building Inspector issued the demolition permit, and the remaining structure was demolished in December 2010. On

January 21, 2011, the petitioner obtained the Putnam County Department of Health's approval of her plans to rebuild a two-bedroom house where the former house had stood. That same day, she applied for a building permit. The Building Inspector denied the application because it was allegedly missing building plans and a survey, notwithstanding that the winter weather was an obstacle to completing a survey.

On February 1, 2011, the petitioner retained a surveyor. However, due to inclement winter weather, the survey was not completed until April 18, 2011.

On October 26, 2011, the petitioner again applied for a building permit with plans and the new survey. The Building Inspector denied this second application on the basis that, under Town Code § 77-48, the petitioner had only one year from the date of the fire to complete construction of a noncomplying house and, at that point, eight months had elapsed since the expiration of that one-year period.

### The ZBA Hearings

On November 4, 2011, the petitioner, acting pro se, filed a "Request for Hearing/Application for Variance" with the ZBA to review the Building Inspector's refusal to issue a building permit. Where the form stated "actual variance requested," the petitioner wrote, "rebuild house where it burned down 2/3/2010, same foot print, going up second floor for back half of home, Chapter 77-48 Paragraph A." A plain reading of the pro se petitioner's completed ZBA form discloses that the petitioner was requesting either permission or a variance (extension) to build as of right under the one-year rule of the Town Code § 77-48, or an area variance to rebuild the house on the nonconforming parcel.

On December 16, 2011, Sprague, representing the petitioner, first appeared before the ZBA. Five concerned neighbors were also present. At the outset, Sprague explained that there was a delay in rebuilding the house because of the insurance problems, including the Insurance Department's investigation, and inclement weather, which prevented a survey in the middle of winter. Sprague asserted that the new house would be in almost the same footprint as the old house, and the only difference was that the new house would be in a slightly different location in order to have the proper setbacks under the current zoning rules. Sprague fielded questions about the dimensions of the new house and agreed to provide the ZBA with correspondence regarding the insurance problems.

In the midst of Sprague's presentation, the ZBA Chairman advised that, "according to the Zoning Code, you are grand-

fathered to rebuild [the house] for a year and [you] lost that right due to the delay in communications with the Town or any action on [your] part to notify the Town." The ZBA Chairman later stated that the zoning code required the petitioner to rebuild the house within one year, but the petitioner was seeking "[t]his variance [because] the year has expired and the [petitioner] is requesting a grant for additional time to rebuild. The [ZBA] has the power to grant that extra time to the [petitioner] if they feel it is appropriate." Sprague advised the ZBA that prompt notice to the Town about the intent to rebuild was demonstrated by site visits by the Fire Inspector and the Building Inspector at or near the time of the fire. Sprague also asserted that the first application for a building permit was made *before* the one-year limitations period had expired.

After hearing neighbors' complaints about debris on the subject property, the ZBA Chairman stated that the petitioner's application to rebuild the house would not be granted while there were existing zoning code violations on the property, such as debris and a preexisting trellis, and the ZBA voted to delay its decision until January 20, 2012, which would be almost two years after the fire. Due to similar zoning code violations that were subsequently reported, the ZBA postponed the petitioner's application at least three more times. During that time, the petitioner and Sprague commenced an action against the insurance company seeking a judgment declaring the lapse of coverage invalid, as well as monetary damages.

On May 21, 2012, well over six months after the petitioner requested a hearing and more than two years after the fire, the ZBA announced that it had received a letter from the Town's zoning enforcement officer stating that the property had been "cleaned up" and the application was thus "worthy of further consideration" on the merits. Sprague, representing the petitioner, explained the difficulties after the fire once more and asserted that, if the original building permit application filed on January 21, 2011, had been granted, the "foundation could have been dug and a modular house could have been put in place long before the year was up."

However, at this point, contrary to his prior assertions, the ZBA Chairman said that, after doing (unspecified) research and consulting with (unspecified) counsel, the ZBA had concluded that the one-year limit was basically set in stone: "the law is what the law is," and the ZBA could not overrule the Building Inspector's determination because they would be impermissibly "re-writing the law." The ZBA Chairman further stated that the mere filing of an application within one year of

the fire was not sufficient to "grandfather" the request for a permit to rebuild. The ZBA Chairman rejected Sprague's contention that there were extenuating circumstances justifying the delay.

Sprague asked if he would be able to "obtain permission to build a new house with a different footprint and ask for a variance to build on the lot." The ZBA Chairman advised that Sprague could do so, but he would face challenges. The ZBA Chairman effectively rejected Sprague's attempt to address "the variance"—presumably an area variance to address the fact that the subject property is a substandard lot—in this proceeding, stating that "the Zoning Board would like to resolve the issues at hand at this meeting," and that Sprague could reapply. Then three of the five ZBA members voted to uphold the Building Inspector's denial of the building permit; the other two members were absent.

Thereafter, the ZBA issued a written decision finding that the Building Inspector reasonably denied the petitioner's request for a building permit. Among other things, the ZBA noted that "the courts have upheld . . . strict time requirements, [and] in this case the [Town] Code requires complete restoration within the one year time period." The ZBA did not cite any case law or other decisional authority. Additionally, the ZBA made a finding that "the alleged hardship that supposedly delayed the reconstruction was overwhelmingly self-created."

It must be noted that contrary to the majority's position, the petitioner did not withdraw the request for an "area variance" made in her November 2011 application as an alternative to the request for an extension (variance) of the one-year rule to rebuild as of right after the fire.

### The CPLR Article 78 Proceeding and the Supreme Court's Judgment

In June 2012, the petitioner commenced this CPLR article 78 proceeding in the Supreme Court, Putnam County, to review the ZBA's determination. The ZBA and the Town opposed the petition.

The Supreme Court granted the petition, annulled the ZBA's determination, and directed the Building Inspector to issue the building permit. The court found that the petitioner made "diligent, continuous efforts to comply with every directive of the Building Inspector in moving forward with the permit application process," and under the "unique circumstances" of this case, reversed the ZBA's determination and remitted the matter for the issuance of the subject building permit. In reach-

ing this determination, the court rejected the ZBA's finding that the petitioner's "hardship was self-created," because such finding lacked a rational basis.

Discussion

Contrary to the opinion of my colleagues in the majority, I believe that the Supreme Court's determination was correct.

"Fair and intelligent land use planning tolerates nonconforming uses partly because property owners would otherwise suffer undue financial hardship if precipitously faced with discontinuance of an existing nonconforming use and loss of investment due to rezoning" (*Matter of Pelham Esplanade v Board of Trustees of Vil. of Pelham Manor*, 77 NY2d 66, 70 [1990]), and, in certain circumstances, this undue hardship "might be construed as confiscatory and unconstitutional" (*Village of Valatie v Smith*, 83 NY2d 396, 400 [1994]). Nonetheless, municipalities may enact laws limiting the perpetuation of nonconforming uses or structures if these laws are made "at an appropriate point in time and under reasonable regulatory circumstances" (*Matter of Pelham Esplanade v Board of Trustees of Vil. of Pelham Manor*, 77 NY2d at 71; *see Village of Valatie v Smith*, 83 NY2d at 399-400; *Matter of Bobandal Realties v Worthington*, 21 AD2d 784, 785 [1964], *affd* 15 NY2d 788 [1965]).

My colleagues in the majority endorse the ZBA's strict interpretation of the then-existing zoning provision, which required the petitioner to rebuild the home within one year, notwithstanding numerous extenuating circumstances, the ZBA's arbitrary and capricious handling of this matter, and the Town's subsequent reasonable extension of that zoning provision to two years. I respectfully disagree with my colleagues and find that, under the particular circumstances of this case, the ZBA's actions were unreasonable, arbitrary and capricious, and an abuse of its discretion.

Turning to the unique circumstances of this case, I first find that the ZBA's delay in determining the petitioner's application to rebuild a small house in a residential neighborhood was unreasonable. There can be no doubt that this was a time-sensitive matter. Nonetheless, the ZBA took more than six months to render a decision on the petitioner's application. It would be one thing if this delay was caused by a backlog or some other circumstance beyond the ZBA's control, but here the ZBA repeatedly pushed back the application on purpose because of reports of minor zoning code violations on the property. The ZBA went so far as to suggest that these violations—which, at worst, amounted to little more than an

eyesore—rendered the petitioner's application to rebuild the home unworthy of consideration. In my view, the petitioner's time-sensitive application to rebuild the house should have been considered first. The removal of debris violations should have been viewed as a condition subsequent rather than a condition precedent to the ZBA's review of the application to rebuild. This was most arbitrary and capricious, and an abuse of its discretion.

Additionally, it appears that the ZBA had a woeful misunderstanding of its authority with respect to the one-year rule throughout the hearing process. On the first hearing date, the ZBA, through its Chairman, expressly asserted that it construed the petitioner's application as a request for a "variance" to extend the one-year time limit set forth in the applicable version of Town Code § 77-48, and that the ZBA had "the power to grant that extra time . . . if they feel it [was] appropriate." Approximately five months later, after repeatedly pushing back the application, the ZBA finally decided that, based upon unspecified research and consultation with unspecified counsel, it actually did not have the power to grant extra time under the ordinance. The ZBA did not cite any authority for its newfound understanding that it lacked the discretion to grant extra time. Thus, the ZBA capriciously made a decision that it could have made six months earlier: that it was simply too late for the petitioner to rebuild, and the ZBA had no discretion to extend the time to rebuild.

The ZBA also failed to correctly and consistently apprehend the petitioner's application, which, in my view, included an alternative request for an area variance. The petitioner was simply seeking to rebuild the house; it did not matter what kind of variance she received in order to obtain the building permit. Local zoning boards are, of course, "vested with broad discretion in considering applications for area variances" (*Matter of Roberts v Wright*, 70 AD3d 1041, 1042 [2010]). In my view, the ZBA took an unreasonably myopic view of the pro se petitioner's request to rebuild the home when it cavalierly rejected the notion that it may consider an area variance or similar variance to allow the petitioner to build the proposed house, which was in almost the same footprint as the prior house and in conformance with the current setback rules. The ZBA unreasonably narrowed its focus in this protracted proceeding and told the petitioner that she would have to come back to apply for a different type of variance.

My colleagues in the majority believe that the petitioner was not truly harmed by the ZBA's determination in this matter

because she can go back and apply for appropriate area variances. However, it appears to me that any future application for area variances would face considerable opposition from the petitioner's neighbors, who may be motivated in part by their own self-interest.

Additionally, I agree with the Supreme Court that this record demonstrates that the pro se petitioner's particular hardship was not solely self-created. She struggled to address everything that accompanies a devastating home fire within a one-year period, such as relocating to a new residence, applying for a demolition permit, getting a contractor to demolish and cart away the structure, applying for a building permit, getting a survey in the snowy season, getting an architect to submit a building plan, getting Department of Health approval, and then getting a contractor to build the new house. Notwithstanding the petitioner's difficulties, the ZBA delayed its decision on her application for six months, and ultimately decided to strictly interpret the applicable one-year rule so as to deny her request to rebuild her house. This strikes me as grossly unfair, unreasonable, arbitrary, capricious, and an abuse of discretion.

Potential Unconstitutional Taking

Although I tend to agree with my colleagues that the petitioner's contention that she was subjected to an unconstitutional taking without compensation may not yet be ripe for review, I believe that this may very well become such a case if the ZBA ultimately thwarts all of her efforts to rebuild a home on the property.

A zoning ordinance may be an invalid exercise of a municipality's police power where "even though reasonably related to a legitimate public purpose, it renders the property affected by it so unsuitable for any purpose for which it is reasonably adapted as effectively to destroy its economic value" (*Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 500 [1983]). Although the property owner bears a heavy burden of showing that no reasonable return may be obtained from the property under the challenged zoning classification (*see e.g. Putnam County Natl. Bank v City of New York*, 37 AD3d 575, 577 [2007]; *Cohen v Vecchio*, 197 AD2d 499, 501 [1993, Balletta, J., dissenting]), a court addressing the issue may consider such factors as the property's topography and the zoning and use of nearby properties (*see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d at 502-503). Here, it is hard to imagine an economically viable use for this substandard residential lot if the ZBA ultimately determines that no house can be built on it.

Lastly, appellate counsel for the ZBA and the Town represented to this Court that he did not believe that the petitioner's application for an area variance would be denied under the circumstances of this case. I hope that is true, especially since the ZBA could have granted that almost five years ago.

For all of the foregoing reasons, I agree with the Supreme Court that, under the unique circumstances of this case, the ZBA's conduct and final determination were unreasonable, arbitrary, capricious, and an abuse of discretion.

Accordingly, I dissent and vote to affirm the Supreme Court's judgment, which granted the petition, annulled the ZBA's determination, and directed the Building Inspector to issue a building permit.